Frank J. BROWN, Plaintiff,

v.

SAFEWAY STORES, INC., Defendant.

Civ. A. No. 15406.

United States District Court
E. D. New York.

Dec. 19, 1960.

Alexander Freiser, New York City, for plaintiff.

Fennelly, Eagan, Nager & Lage, New York City, William P. Lage, Charles J. Nager, New York City, of counsel, for defendant.

MISHLER, District Judge.

This action is brought by plaintiff for breach of alleged contract of employment. The complaint states four claims as follows:

(1) Breach of a contract for life employment which contract plaintiff alleges was amended to provide for employment until such time as plaintiff attained the age of 65 years. Pursuant to paragraph three of a pre-trial order, made April 22, 1959, the Court directed that the allegations of the claim be interpreted to allege in the alternative, an employment from year-to-year.

(2) The second stated claim is similarly phrased except that the gravamen alleges that defendant " * * * violated, breached and repudiated * * * " representations and warranties.

(3) For punitive damages arising out of the facts alleged in claims 1 and 2.

(4) Breach of contract and violation of representations and warranties set forth in claims 1 and 2 and for punitive damages for the " * * * wilful, vicious, malicious and unlawful acts * * " in discharging plaintiff.

The answer generally denies the claims and affirmatively sets forth the following defenses:

1. The employment was terminable at will.

2. The employment was terminable for cause.

3. Payment.

4. Statute of frauds.

5. Laches.

This case together with a companion action William P. Reidy against Safeway Stores, Inc., Civil No. 15373, was tried before the Court without a jury pursuant to the aforementioned pre-trial order.

*Primary Issues*

A. Was an oral contract for life employment entered into, or for any other definite period or term?

B. Were the agents or employees of the defendant corporation authorized to enter into the alleged contract of employment?

*Facts*

Defendant hereinafter referred to as "Safeway" is a national food chain, organized under the laws of the State of Maryland, with its principal office in Oakland, California.

Plaintiff for many years prior to August 1941, was a District Supervisor for a retail food chain known as Daniel Reeves, Inc., hereinafter referred to as "Reeves". In August 1941, Safeway merged with Reeves. After the merger, the plaintiff became an employee of Safeway, performing substantially the same work under the title of District Manager. On April 5, 1949, defendant, without notice, terminated the employer-employee relationship.

At the time of the merger, the plaintiff received a monthly salary of $275 from Reeves (Exhibit B). At the time of the merger, Safeway District Managers were paid $100 per week, plus additional sums computed annually and based on gross sales and location gains. Because of the restrictions placed by the War Labor Board, plaintiff did not immediately receive the salary scale paid by Safeway but continued to receive from Safeway the salary of $275 per month.

In 1944, the plaintiff received the salary paid to all Safeway District Managers, including annual salary bonuses based on gross sales and location gains.

In 1948 and 1949, the basic salary paid by Safeway to District Managers was

$7,800 per year, which was payable in weekly installments of $150 each, plus an incentive bonus equal to one-half of one percent of total sales and one-tenth of one percent of location gains, with a maximum gross salary of $12,000 per year (SM 93–96).

On March 2, 1942, plaintiff, at the request of Safeway's personnel manager, executed a formal application for employment (Exhibit B). The application contained the following certification:

"* * * I understand that if I am accepted for employment such employment may be terminated at any time without previous notice, all wages to cease at the time of such termination."

In bold type, the application contained the following legend:

"Notice To Applicant

Employment given under this application is *only temporary*. Permanent employment is subject to our receiving satisfactory replies from the references which you have given us."

Plaintiff showed that prior to August 1941, Safeway did not own or operate any retail food stores in the New York Metropolitan Area. Safeway's merger with Reeves afforded Safeway an opportunity to enter the New York market. The Reeves locations were not suited to the Safeway business policy and operation. As rapidly as Safeway could prudently accomplish its goal, it converted the Reeves service stores to self-service stores and opened self-service supermarkets.

The President of Safeway appointed one Theodore C. Wagner as Division Manager and placed him in charge of the New York Metropolitan Division. Mr. Wagner assumed his duties when the merger was accomplished. He appointed the Managers of the various departments. The Manager of the Retail Operations Department exercised supervisory authority over the District Managers.

Shortly after the merger, Mr. Wagner addressed a meeting of Safeway District Managers who were formerly District Supervisors at Reeves, held in the former offices of Reeves at 44 West 143rd Street, New York City. Approximately 30 former District Supervisors, including the plaintiff, were present. Plaintiff related how Mr. Wagner described the growth of Safeway and its entry into the New York Metropolitan Area. Plaintiff testified that Mr. Wagner said "* * * He wanted us and he needed us to stay with them, and that there would always be a job for each one of us." (SM Reidy-direct page 17. Reidy-cross page 158, lines 21 to 23; page 159, lines 5 to 8.)

On or about December 19, 1941, another meeting of the District Managers was called at the Safeway office at 300 Mercer Street, Jersey City, New Jersey. One Patrick Mulkeen, Manager of Retail Operations, advised the meeting that 19 District Managers were summarily dismissed and their employment terminated by reason of the closing of some of the former Reeves service stores; the others remaining in the employ were told that they were selected to put the Safeway program into operation.[1]

Plaintiff testified to another occasion when he had a conference with a Mr. Glennin who was Asssistant Manager of Retail Operations. Plaintiff said he expressed some concern about the periodic dismissal of various District Managers. Mr. Glennin advised plaintiff that defendant was now down "* * * to the feel of the way we are going to operate the division * * * You eventually have nothing to worry about. You will

---

[1]. "He (Mr. Mulkeen) said we were very fortunate to be on the ground floor of this fast growing business and have an opportunity to grow with Safeway and we would have jobs as long as we wanted them 'as long as we lived' was the expression that he used." (Reidy-direct. SM 19, lines 6 to 11.)

always be one of us." (Reidy-cross SM 195, lines 10 to 15.) [2]

### Contention of Plaintiff

Plaintiff's position is that the statements made at the various meetings by Messrs. Wagner, Mulkeen and Glennin and the statements contained in the pension plan constituted offers of life employment and/or that the same constituted evidence of the existence of an oral contract either of life employment or employment of the plaintiff to age 65; the plaintiff also claims that the statements constituted offers and/or evidence of the existence of a contract of "permanent" employment, which he construes to mean employment for so long as a position is available in the Safeway organization; plaintiff also takes the position that the payment of the incentive bonuses on an annual basis constitute an employment from year-to-year.

### Defendant's Contentions

A sharp issue of fact is presented as to Mr. Wagner's purpose and intent at the first meeting of former Reeves District Supervisors. Defendant argues that the first meeting was essentially a "pep talk" [3]. Defendant offered proof that no offer of life employment was made nor was one intended, nor could one be gleaned from the events that transpired at the first meeting or at the subsequent meetings or from the notice of stockholders' meeting presenting the proposed pension plan.[4]

Defendant further shows that the President of defendant corporation is

---

2. In November or December 1946, Mr. Wagner again addressed a meeting of District Managers in which he outlined a proposed pension plan to be submitted to the Annual Meeting of Stockholders in December 1946 (Exhibit 4).

"In drafting the plan, the directors have kept in mind the fact that an employee retirement plan, in order to be permanent and have value to the company, must provide benefits that are attractive and of real interest to the employees, at a cost which the company can afford to pay indefinitely.

"The plan, the benefits of which are by its terms restricted to those employees who have proved the permanency of their employment, provide liberal retirement income during life, after retirement, at a cost which your directors feel is reasonable." (SM Reidy-direct page 58, line 25 to page 59, line 13.)

"Employees eligible to participate."

"Mr. Lage: May I ask what page?

"Mr. Freiser: Two.

"Every person employed by the company or any domestic subsidiary of the company or any domestic subsidiary participating in the plan, being called the employer, whose full-time employment as defined in Exhibit B began on or before his 55th birthday and who had attained his 55th but not his 65th birthday, shall be eligible to participate under the plan. When he shall have completed at least five continuous years of full-time employment, such eligible employee shall become a member when he accepts the plan in writing and authorizes his employer to deduct from his compensation

a contribution specified below." (SM Reidy-direct page 60, line 25 to page 61, line 17.)

Article 8, paragraph 1, states: "Neither the establishment of a trust, created by the trust agreement nor any modification thereof, nor the creation of any fund or account, nor the payment of any benefits shall be construed as giving to any member or any person, any legal or equitable rights against the employer or any officer or employee thereof, or the trustee or the committee except as herein provided; *and in no event, shall the term of employment of any member be modified or in any way affected hereby.*" (Italics supplied.) (SM Reidy-cross page 188, lines 9 to 18.)

3. "He shook hands with you, welcomed us into the fold, and told us that we were to represent Safeway and that we didn't have anything to dread; he mentioned the fact that he himself was the victim of a merger, such a similar merger, and that we didn't have anything to worry about. Safeway was to grow and become a big factor in the East, and he looked upon us as being the boys to put it over; if we were good men, we didn't have to worry about a job, there would always be a job for us." (T. Reidy-direct page 5, lines 9 to 17.)

4. "I couldn't quote Pat Mulkeen. He said, he said that any of us that were retained as of that date could feel confident of continued employment, while jobs were available we would have them." (T. Reidy-direct page 10, lines 19 to 22.)

elected for a period not exceeding one year and is vested with the usual authority of the "chief executive officer of the corporation."[5] Article VII of the By-laws expressed the following limitation on his right to enter into contracts on behalf of the corporation:

> "He shall when authorized to do so by the Board, execute bonds, mortgages and other contracts in behalf of the corporation * * *."

Defendant argues that the President's authority to contract was expressly limited by the by-laws. The power to enter into the contract alleged is not within the scope of authority of a president of a corporation. The authority of the Division Manager of the New York Metropolitan Area, appointed by the President, cannot be greater than the President; and, likewise, the authority of the appointees of the Division Manager cannot exceed the authority of the Division Manager.

### The Nature of the Employment Contract

The Court finds that the employment contract was indefinite as to term and terminable at the will of either party.

The relationship between the plaintiff and Reeves that existed prior to the merger in August 1941, was continued by Safeway. The plaintiff has not shown any change in the relationship after the merger; the plaintiff confirmed the relationship in his application of March 22, 1942. The payment to the plaintiff of incentive wages or bonuses annually, based on gross sales and increased location gains, did not convert an indefinite employment to one from year-to-year. The method of payment was one of convenience and did not change the terms of the contract. In Williston on Contracts, Third Edition, Volume 1, Section 39, page 117, the author states:

> "In contracts of service when no time of employment is fixed by the express terms of the contract, the apparent intention of the parties must be sought as a question of fact, provided any circumstances can be shown which tend to prove that the parties were justified in assuming as against one another a definite intention in regard to the matter.
>
> "The rule * * * is generally * * * that a hiring indefinite as to time is terminable at the will of either party and creates no executory obligations. This has been held true even in regard to offers and agreements of service which specify that the employee shall receive a fixed sum for each day, week, month or year of service."

To the same effect, see Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Raes v. So-Lite Furniture Corp., 4th Dept.1957, 4 A.D.2d 851, 166 N.Y.S.2d 471; Yazujian v. J. Rich Steers, Inc. et al., 195 Misc. 694, 89 N.Y.S.2d 551; Greer v. National Carbide Co., D.C., 186 F.Supp. 18; Deering-Milliken & Co. v. Modern-Aire of Hollywood, 9 Cir., 231 F.2d 623.

Plaintiff's claim, that the statements made at the various meetings of District Managers and contained in the Notice of Annual Meeting of Stockholders and in the Pension Plan proposed constituted an offer, representation or warranty of life employment, is rejected. Contracts of life employment or permanent employment, as defined by the plaintiff herein, are extraordinary and unusual. The meetings were not called for the purpose of discussing or negotiating the term of the employment contract, or wages, or other conditions of employment; nor were the statements contained in the Notice of Annual Meeting of Stockholders, and in the proposed Pension Plan, intended to be an offer of life employment or employment for any other period. The intention to make an offer of life employment or any unusual offer of employment, as gleaned by the plaintiff, must be clear and unequivocal. A casual remark made at a meeting, a phrase plucked out of context, is too

---

5. Exhibit L, Article VII of the By-laws of the corporation.

fragile a base on which to rest such a heavy obligation inherent in such a contract.

Absent the intention of the employer to offer a life contract, or contract of employment to age 65, or contract of employment from year-to-year, mutuality of assent, the basic element of contract, is lacking. Utley v. Donaldson, 94 U.S. 29, 47, 24 L.Ed. 54; Dexter v. Hall, 82 U.S. 9, 20, 21 L.Ed. 73; Whiteside v. United States, 93 U.S. 247, 255, 23 L.Ed. 882; National Bank v. Hall, 101 U.S. 43, 25 L.Ed. 822.

Nothing in the testimony supports plaintiff's definition of the use of the word "permanent" and/or permanency in connection with the employment contract. Plaintiff's definition is descriptive of a relationship not contemplated by the parties, nor commonly understood or defined. Plaintiff urges the adoption of a meaning which would continue the employment relationship so long as a position or job exists in the Safeway organization, not necessarily a district manager's position at a salary of a district manager but any job at any salary. 2 Bouv.Law Dict., Unabridged, Rawle's Third Revision, p. 2568 defines permanent employment as follows:

"Employment for an indefinite time which may be severed by either party."

See Combs v. Standard Oil Co. of Louisiana, 166 Tenn. 88, 59 S.W.2d 525; Arentz v. Morse Dry Dock & Repair Co., 249 N.Y. 439, 164 N.E. 342, 62 A.L.R. 231 and Heaman v. E. N. Rowell Co., supra.

*Authority of Agents and Employees*

A president of a corporation who is vested with the usual powers of the chief executive of a corporation does not have the power or authority to bind a corporation to a lifetime contract. The Court finds that in the case at bar no express authority was granted by the Board of Directors, nor can any be inferred from the powers expressly granted. In Heaman v. E. N. Rowell Co., supra, the Court of Appeals of New York, in discussing the authority of a president

of a corporation to enter into contracts of life employment, said at page 231 of 261 N.Y., at page 84 of 185 N.E.

"Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power 'to appoint, remove and fix the compensation of employees.' That any board of directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring. Carney v. New York Life Ins. Co., 19 App.Div. 160, 161, 45 N.Y.S. 1103, affirmed, 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471; Alexander v. Equitable Life Assur. Soc., 233 N.Y. 300, 135 N.E. 509; Clifford v. Firemen's Mut. Benefit Ass'n of City of New York, 232 App.Div. 260, 249 N.Y.S. 713, affirmed 259 N.Y. 547, 182 N.E. 175; Davidson v. Library Bureau, 234 App.Div. 47, 254 N.Y.S. 95, modified 259 N.Y. 654, 182 N.E. 221."

Judge Medina, writing for the Circuit Court of Appeals of this Circuit, in Lee v. Jenkins Bros., 268 F.2d 357, made an exhaustive and comprehensive analysis of the power and authority of a president or other executive officer of a corporation with reference to contracts of employment. Citing with approval Heaman v. E. N. Rowell Co., supra, the Court stated as follows at page 367:

"It is generally settled that the president, as part of the regular

course of business, has authority to hire and discharge employees and fix their compensation. In so doing, he may agree to hire them for a specific number of years if the term selected is deemed reasonable. But employment contracts for life or on a 'permanent' basis are generally regarded as 'extraordinary' and beyond the authority of any corporate executive if the only consideration for the promise is the employee's promise to work for that period."

In Starr v. Superheater Co., 7 Cir., 102 F.2d 170, at page 175, the Court, citing Heaman v. E. N. Rowell Co., supra, with approval, said the following:

"In the State of New York, where this contract was made, an oral contract of permanent or life employment made by a corporation through its vice-president is insufficient in law and is unenforceable without authorization or ratification by its board of directors."

■ The president of a corporation is its servant and not its master. The authority of a president of a corporation to bind the corporation is derived from its board of directors. In the case at bar the President had no power to enter into a contract for life or for a term to employee's age 65. The President of Safeway was elected for one year. The power to bind the Corporation to a lifetime contract of employment or one to employee's age 65, is a grant of authority to fix and compromise the Corporation's policy for a generation. It cannot be said that such unusual authority exists.

In view of the findings made, it is unnecessary to decide the other issues raised by the answer.

This opinion constitutes the findings of fact and conclusions of law.

Submit judgment dismissing the complaint.