**Madeline G. CHASTAIN, as Executrix of the Estate of Homer L. Chastain, Jr., Plaintiff-Appellee,**

**v.**

**The KELLY–SPRINGFIELD TIRE COMPANY, a corporation and the Goodyear Tire & Rubber Company, a corporation, Defendants-Appellants.**

No. 83–7226.

United States Court of Appeals, Eleventh Circuit.

June 7, 1984.

L. Vastine Stabler, Jr., Frank D. McPhillips, Birmingham, Ala., for defendants-appellants.

Joe R. Whatley, Birmingham, Ala., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

In 1965 plaintiff Homer L. Chastain, Jr., went to work for Duke Tire & Rubber Company as a commissioned salesman selling tires in the North Alabama region. In order to increase sales and distribution of its tires in this region, Star Rubber Company acquired the assets of Duke in 1966. After the acquisition, Duke became merged into Star. Star is a division of Kelly-Springfield Tire Company, which is in turn a subsidiary of Goodyear.

Charles Sides was an assistant to the executive vice-president for sales at Kelly-Springfield and negotiated directly with G.T. Duke, the owner of Duke, during the acquisition. Early in the negotiations, Sides testified that Mr. Duke expressed a desire to provide his commissioned salesmen, including the plaintiff, with long-term employment with Star. The final written agreement between Star and Duke contained no mention of any long-term or guaranteed employment for the commissioned salesmen; it did, however, contain a provision guaranteeing employment for Mr. Duke and his son for ten years.

In July of 1966, Sides; Jack Lewin, the president of Star; Mr. Duke; and Gene Stuart, plaintiff's immediate supervisor at Duke, met with the commissioned salesmen of Duke at the Tech Motel in Atlanta, Georgia. It is undisputed that the purpose of this meeting was to reassure the Duke commissioned salesmen that they could continue working for Star on a commissioned basis after the merger of Duke and Star. Mr. Duke told the salesmen that he had sold the company, but that they "were all taken care of,"[1] and that "it was the intent of this arrangement that the com-missioned agents would not be dismissed or leave the company; that they would be continued."[2] Both Sides and Lewin reiterated this effect of the acquisition on the salemen's jobs. In this context, Sides then made the statement that is the basis of this appeal. According to plaintiff, Sides told the salesmen that "our jobs was [sic] secure; that we would continue on like we had been ... [i]f we did our job, kept our noses clean, didn't make waves and not sell to Goodyear and Kelly accounts."[3] Jerry Cotton, another salesman present at the meeting, testified that Sides stated that after the merger "our commissioned sales jobs were secured as long as we did our jobs, and did not go against company policy, such as selling accounts of, trying to sell accounts of Goodyear or Kelly or other things in the policy, such as that."[4] Sides testified that he made this statement at the meeting, but was never questioned about and never offered the salesmen a lifetime contract of employment with Star. Stuart testified that he knew of no promise of lifetime employment made to the plaintiff and that if there had been such a promise he would have known about it.

Plaintiff continued working for Star after the merger, and testified that he did so in reliance solely on Sides' statement at the 1966 meeting as an offer of a lifetime employment. Although plaintiff did not testify that he sought or was offered a job with another tire company, he testified that opportunities were available and that he stayed with Star due to the promise of lifetime employment. Further, plaintiff testified that in reliance on this promise he did not sell to Goodyear or Kelly accounts, and that he spent his own money promoting Star's business, such as buying lunches for customers, paying for signs that advertised Star tires, purchasing promotional items for customers and paying warranty claims. Plaintiff acknowledged, however, on cross-examination that his four percent commission with Star was un-

---

1. Record Vol. II at 74.

2. *Id.* Vol. III at 399.

3. *Id.* Vol. II at 225.

4. *Id.* at 74.

derstood to include compensation for expenses he incurred in generating and promoting sales, and that he understood that the commission rate he received could be changed from time to time.

In response to increased competition in the tire market, Star reorganized its marketing districts for its salesmen in 1980 and 1981. Star also stopped paying its salesmen on a commissioned basis and all of its salesmen now are salaried. In November of 1981 plaintiff was informed by Star that he was being terminated in one month. Of the four of the eight original Duke salesmen still with Star in 1981, two remained as salaried employees, and the plaintiff and one other were terminated.

Plaintiff filed suit against Kelly-Springfield and Goodyear in the United States District Court for the Northern District of Alabama. Plaintiff's original complaint was framed in four counts and predicated primarily upon diversity jurisdiction.[5] Pertinent to this appeal, plaintiff was granted leave to amend the complaint to add Count Six, framed as a claim under promissory estoppel theory which plaintiff claimed arose when he relied on the promise of lifetime employment in accepting the job with Star. In a ruling not contested on this appeal, Goodyear was dismissed as a party to the action on motion for summary judgment and summary judgment granted in Kelly-Springfield's favor on all but Count One, alleging that the defendants had been unjustly enriched by profiting from the business which plaintiff had built up, and Count Six of the complaint. On the morning of trial, plaintiff was granted leave to amend his complaint to add Count Seven, framed as a claim for breach of an express oral contract of lifetime employment. Kel-

ly-Springfield's motion for directed verdict was granted by the district court as to Count One, but denied on Counts Six and Seven which were submitted to the jury. The jury returned a general verdict in favor of the plaintiff for $170,000.00. The district court denied Kelly-Springfield's motion for judgment notwithstanding the verdict or in the alternative for a new trial. Kelly-Springfield timely appealed to this Court. Plaintiff died on May 20, 1983, and his executrix, Madeline Chastain, was substituted as the appellee in this appeal.

This appeal presents a single issue [6]: was the statement made by Sides at the 1966 meeting sufficient as a matter of Alabama law to constitute an offer of lifetime or permanent employment? Holding that it was not, we reverse the district court's denial of Kelly-Springfield's motion for directed verdict.

It is axiomatic that a contract for lifetime employment must contain the essential element of an offer of lifetime employment. In this case it is undisputed that Sides' above-quoted statement at the 1966 meeting is the language constituting such a claimed offer of lifetime employment. Therefore, our sole inquiry is whether this language can, under Alabama law, satisfy the essential element of an offer of lifetime employment in order to support such a contract.

■ Under Alabama law, an offer expressly stating that the employment is "permanent" or for "life" will support a contract for the same. *Bates v. Jim Walter Resources, Inc.*, 418 So.2d 903 (Ala. 1982); *Scott v. Lane*, 409 So.2d 791 (Ala. 1982); *National Union Life Insurance Co. v. Ingram*, 275 Ala. 310, 154 So.2d 666

---

**5.** The first three counts of the complaint, grounded in diversity jurisdiction, alleged theories of unjust enrichment, conversion and the tort of outrage arising from plaintiff's termination. Count Four alleged a violation of both Sections 1 and 2 of the Sherman Act. Count Five, added by amendment, alleged that plaintiff was the third party beneficiary of the contract between Star and Duke for the acquisition of Duke, which plaintiff claimed provided for lifetime employment for the commissioned salesmen of Duke.

**6.** Because we hold that no offer of permanent employment was made to the plaintiff, we do not reach Kelly-Springfield's further arguments that there was no evidence of consideration to support such a promise, that Sides lacked actual authority to bind Star to such a promise, that Kelly-Springfield did not ratify or was estopped from denying such a promise, and that the district court erred in admitting the testimony of plaintiff's expert witness concerning his prior commissions as a basis for awarding damages.

(1963); *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 186 So. 699 (1939). However, "an oral employment contract that neither includes, nor specifies, any particular term, length or duration of employment is considered an employment at will contract." *Bates*, 418 So.2d at 905. The Alabama Supreme Court has "consistently held that employment contracts without a fixed term of employment are terminable at the will of either party and may be terminated for good cause, bad cause, or no cause at all." *Id.* In *Kitsos v. Mobile Gas Service Corp.*, 431 So.2d 1150 (Ala.1983), the Alabama Supreme Court expressly refused to abandon the employment at will doctrine when the essential elements of a lifetime employment contract failed.

▮ It is undisputed that there was no evidence presented at trial that Sides used the terms "lifetime" or "permanent" employment during the course of the 1966 meeting and the statement relied upon by plaintiff contains no such language. The alleged offer in this case contains no express language specifying the particular term, period or duration of the offered employment. Therefore, unless Sides' statement to the effect that the commissioned sales jobs were secure "as long as we did our jobs, and did not go against company policy" can be construed as specifying a fixed promised term of employment, the offer in this case must be held to be terminable at will and not an offer for lifetime or permanent employment.

Plaintiff relies on *Alabama Mills, supra,* for such a construction of Sides' statement. In *Alabama Mills*, the plaintiff was working for the Department of Public Works when offered a job with the defendant. According to the plaintiff, the defendant's representative "told me that if I would go with him he would guarantee me a regular job just as long as I wanted a job with him." 186 So. at 701. Plaintiff was later terminated by the defendant and brought suit claiming a breach of a lifetime employment contract. On appeal, the defendant argued, *inter alia*, that this promise was too indefinite to be operative. Although reversing the judgment for the plaintiff on the grounds that plaintiff had failed to

prove consideration for such a promise and that the representative had actual authority to bind the defendant to such a contract, the Alabama Supreme Court recognized that, subject to certain implied conditions, an offer of employment for as long as the employee desired was an offer of permanent employment. The court defined permanent employment as follows:

> [W]e will endeavor to find an exact meaning of such a contract as stated in plaintiff's testimony. A leading case upon that subject is *Carnig v. Carr*, 167 Mass. 544, 46 N.E. 117 ... It was said that what they meant by a permanent employment was so long as defendant was engaged in the same nature of business and needed the service of such an employee, and plaintiff was able and willing to do it satisfactorily and gave no cause for his discharge. So construed, it was said the contract was capable of enforcement.
>
> . . . .
>
> "[P]ermanent" employment will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do and the latter shall perform the service satisfactorily. *Id.* at 701, 702.

The court held that:

> If [an employee] has purchased a contract by which his employer leaves the period of duration to him, it resembles the purchase of other sorts of option rights, subject to the limitation impliedly included that the employer shall continue in such business and need the things to be done, which the employee is to do. In other words, such employee must have a preference over others in doing that sort of work.
>
> *Id.* at 702.

Plaintiff's reliance on *Alabama Mills* is misplaced; the offer in *Alabama Mills* is distinct from Sides' statement in several aspects which are dispositive of the present appeal.

First, we note the obvious: Sides' statement did not promise employment to the commissioned salesmen "as long as they

wanted," or "as long as they desired." Instead, according to the plaintiff, Sides told the salesmen that their "jobs was [sic] secure; that we would continue on like we had been ... [i]f we did our jobs, kept our noses clean, didn't make waves and not sell to Goodyear and Kelly accounts." Although since 1939 the Alabama Supreme Court has twice reiterated the *Alabama Mills* holding that an offer of permanent employment may be made by an offer of employment for as long as the employee desires, on both occasions the court did not address the issue of whether language apart from an express statement that the employment was for as long as the employee desires will suffice.[7] We decline to speculate whether the Alabama Supreme Court would extend *Alabama Mills* to the present case because we hold that both the context in which the present statement was made and the statement's lack of a clear and unequivocal offer of permanent employment or employment for as long as the salesmen desired are further crucial factors distinguishing this case from *Alabama Mills*.

It is again axiomatic that language claimed to constitute an offer for a binding contract must be considered in the context in which it was made. In *Alabama Mills*, it is clear that the offer of employment for as long as the plaintiff desired was made in the course of inducing plaintiff to leave his current job and accept employment with the defendant. Unlike *Alabama Mills*, it is undisputed that the claimed offer of lifetime employment in the present case was made in the course of a meeting with the primary purpose of reassuring the Duke commissioned salesmen that they would continue working for the defendant after the merger and that they would continue working on a commissioned, as opposed to a salaried, basis. Both Sides and Stuart testified that it was their understanding at the meeting that Sides' statement meant only that Kelly-Springfield was pleased to have the salesmen join the new company, expected them to continue working as they had for Duke, and expected them to abide by the defendant's company policies. Stuart testified that no one from Duke was guaranteed lifetime employment before or after the merger, and plaintiff acknowledged that he was not offered a contract for lifetime employment with Duke. Therefore, we hold that a critical factor distinguishing this case from *Alabama Mills* is the context in which the claimed

---

7. In *Scott v. Lane*, 409 So.2d 791 (Ala.1982), plaintiff alleged that the defendants induced her to leave her job and work for them by offering to employ her "as a nurse-anesthetist for the Defendants for as long as the plaintiff should wish to continue said employment with the Defendants." *Id.* at 791 n. 1. Although quoting extensively from *Alabama Mills*, including the definition of permanent employment, the sole issue addressed by the Alabama Supreme Court in reversing the trial court's dismissal of plaintiff's cause of action for the breach of an express oral contract of permanent employment was whether there was sufficient consideration for such a promise.

In *Bates v. Jim Walter Resources, Inc.*, 418 So.2d 903 (Ala.1982), the court noted that if "there is a promise of permanent employment or employment for as long as the employee wishes, the relinquishment of prior employment may constitute sufficient consideration to bind the promisor." *Id.* at 906. The court held, however, that since "it is undisputed that there was no understanding, agreement or promise whatsoever" between the plaintiff and defendant "regarding the term, length or duration of her employment," *id.*, "this ... is not a case of permanent employment or employment of a definite duration or employment for as long as [plaintiff] desired." *Id.* Although the plaintiff in *Bates* further claimed that "her employment meets the definition of permanent employment set forth in *Alabama Mills*," *id.*, quoting the language relied upon by the plaintiff in the present case, the *Bates* court did not reach this issue, holding instead that the "implicit term of the employment contract that the employee would remain employed only if the employer had need of the employee's services," *id.*, was not met in this case since the plaintiff was terminated because the defendant did not need her services.

We note Kelly-Springfield's *Bates* argument that because it is undisputed that after 1981 it eliminated commissioned salesmen's jobs, even if plaintiff was promised lifetime employment as a commissioned salesman, the implicit term of the contract that the plaintiff would be employed only if the defendant had need of his services prohibits enforcing this contract. Because we hold that no offer of permanent employment was made by Sides we do not address this argument.

offer of employment was made: unlike *Alabama Mills*, it is clear that the present offer was not made in the course of discussing or negotiating an employment contract between the plaintiff and the defendant, but instead was made in the context of reassuring the Duke salesmen "that we would continue on like we had been" after the merger.

█ Further, the *Alabama Mills* court recognized that a "contract such as plaintiff claims is of an extraordinary type, requiring an independent substantial valuable consideration, and that authority to make it must be clear and not to be lightly inferred." 186 So. at 704. As a corollary to this principle, it follows that an offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation. In the present case, it is clear that Sides' statement, unlike that in *Alabama Mills*, does not represent a clear and unequivocal intent to offer lifetime employment or employment for as long as the plaintiff desired.

Although not binding on an Alabama court, *Brown v. Safeway Stores, Inc.*, 190 F.Supp. 295 (E.D.N.Y.1965), is a case involving a factual situation close to that in the present appeal. The plaintiff in *Brown* was a district supervisor for a retail food chain, Reeves, Inc., that merged into the defendant. Shortly after the merger, Safeway's division manager called a meeting of all of the Reeves' supervisors and, according to the plaintiff, told them that "he wanted us and he needed us to stay with him, and that there would always be a job for each one of us." *Id.* at 297. According to another supervisor present, the manager stated that "if we were good men, we didn't have to worry about a job, there would always be a job for us." *Id.* at 298 n. 3. Several months later, another Safeway manager called a meeting of Reeves' supervisors and told them that "we would have jobs as long as we wanted them, 'as long as we lived' was the expression that he used." *Id.* at 297 n. 1. Finally, the plaintiff testified to another conference he had with a Safeway manager, in which he was advised that "you eventually have nothing to worry about. You will always be one of us." *Id.* at 297–98.

Applying New York law, the district court rejected plaintiff's claim that these statements constituted a binding offer of lifetime employment:

> Contracts of life employment or permanent employment ... are extraordinary and unusual. The meetings were not called for the purpose of discussing or negotiating the term of the employment contract, or wages, or other conditions of employment ... The intention to make an offer of life employment or any unusual offer of employment, as gleaned by the plaintiff, must be clear and unequivocal. A casual remark made at a meeting, a phrase plucked out of context, is too fragile a base on which to rest such a heavy obligation inherent in such a contract. *Id.* at 299; *see also Page v. Carolina Coach Co.*, 667 F.2d 1156, 1157–58 (7th Cir.1982) (per curiam) (statement that plaintiff was a good employee and would move up in the company if he continued to do his job, held a casual remark that "could not reasonably be interpreted as a promise of lifetime employment, but rather only as words of encouragement.").

We find no principled basis for distinguishing between the result reached by the *Brown* court's straightforward application of the general contract principles that an alleged offer must be considered in context and that a contract of lifetime employment is extraordinary and unusual and that of an Alabama court applying these same principles.

For these reasons, we hold that in the absence of any proof of a promise of lifetime or permanent employment the district court erred in denying Kelly-Springfield's motion for a directed verdict on Count Seven of the complaint, plaintiff's claim for breach of an express oral contract of lifetime employment. *Cf. Wilson v. Vulcan Rivet & Bolt Corp.*, 439 So.2d 65, 67 (Ala. 1983).

Finally, since we hold that there was no promise of lifetime employment in this

case, it necessarily follows that the district court erred in denying Kelly-Springfield's motion for directed verdict on Count Six of the complaint, plaintiff's promissory estoppel theory. Since there was no promise on which a legally binding contract of permanent employment could be based, promissory estoppel theory may not be utilized to supply the lack.

> [A]lthough equitable estoppel might transform an otherwise non-binding agreement into a legally binding contract, this Court has held that the principle of promissory or equitable estoppel cannot be utilized to create primary contractual liability where none would otherwise exist.... [I]n *Ivey v. Dixon Investment Co.,* 283 Ala. 590, 219 So.2d 639 (1969), this Court stated, "[A]n estoppel cannot operate to create binding effect against a party under circumstances which would not sustain a contract if one had been made."

*Bates,* 418 So.2d at 905 (citations omitted).

The judgment of the district court entered in favor of the plaintiff is REVERSED and the case is REMANDED for the entry of judgment in favor of the defendant.