Jack SCHNEIDER, Plaintiff-Appellant,

v.

RUSSELL CORPORATION, an Alabama corporation, Defendant-Appellee.

No. 86–7592.

United States Court of Appeals, Eleventh Circuit.

July 30, 1987.
Rehearing and Rehearing En Banc Denied Sept. 14, 1987.

W. Eugene Rutledge, Birmingham, Ala., for plaintiff-appellant.

John Mann Johnson, Bradley, Arant, Rose & White, Hobart A. McWhorter, Jr., Birmingham, Ala., for defendant-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by Schneider from the grant by the trial court of a motion for summary judgment and the dismissal of Schneider's complaint seeking damages for breach of contract of employment with Russell Corporation.

## I. STATEMENT OF THE CASE

This action was commenced on February 19, 1985 when the plaintiff filed a complaint for declaratory judgment against the defendant. This action sought an interpretation by the trial court of a contract of employment of plaintiff in accordance with plaintiff's understanding that he had been employed as a commissioned salesman for life or until his retirement. Following the termination of his employment a few days later, plaintiff filed a motion for a temporary restraining order and preliminary injunction pending the court's decision on the declaratory judgment matter. On March 20, 1985, the district court denied the plaintiff's motion after a hearing and entered findings of fact in support of its order. This Court affirmed this judgment on appeal.

In the meantime, pending appeal, the parties proceeded with discovery and the plaintiff filed an amendment on August 16, 1985 stating a claim for breach of contract. Thereafter, Russell filed a motion for summary judgment which the trial court granted on August 16, 1985. This appeal followed.

## II. STATEMENT OF THE FACTS

This case involves a termination by Russell of a contract of employment with the plaintiff. Because of the issues raised, it is necessary to consider something of the history of the relationship of plaintiff Schneider and his father, Kenneth Schneider, with the Russell Corporation. This relationship began in 1951 when Russell, a textile and clothing manufacturer with its headquarters in Alexander City, Alabama, engaged Kenneth Schneider as a sales representative. Considering both the oral testimony given at the hearing for the preliminary injunction and the depositions, the following facts were established by the plaintiff. Kenneth Schneider was given the exclusive territory for Russell in Tennessee, Kentucky, West Virginia, North and South Carolina, Virginia, Louisiana, Mississippi and Florida, with an office located in Nashville, Tennessee. His contract provided for payment of a commission of three percent on all sales of Russell's knit apparel goods in his territory whether made by Schneider or otherwise. Schneider paid all of the operating expenses of his office including travel and sales expenses, customer entertainment and salaries of his employees out of the three percent commission. By 1954 he had developed sales in this territory to the extent that he needed another salesman. He therefore hired his son, Jack, the plaintiff in this action, as a salesman. Jack was initially trained by his father, then sent for a period of approximately six to eight weeks to a training course at Russell's Alexander City plant. Schneider paid for the plaintiff's attendance and expenses at the training course. Between 1954 and 1972 the plaintiff, as an employee of his father, became acquainted with and developed a relationship with his father's customers and obtained new customers on his own. During this time he was employed exclusively by his father and not by Russell.

In the summer of 1972, discussions began between Kenneth Schneider and Russell regarding Schneider's retirement, since he was at that time 70 years of age. Russell arranged a meeting among Kenneth Schneider, Jack Schneider, the plaintiff, and two representatives of Russell, Gene Gwaltney, president and chief executive officer of Russell, and Scott Howell, general manager and later vice president in charge of the Russell knit apparel division, the division for which Kenneth Schneider was working. At this meeting, Kenneth Schneider did not wish to retire completely, and stated that he wanted to continue to work for a few more years. After considerable discussion, an oral agreement was reached at that meeting between the Russell representatives and the plaintiff and his father. Under this agreement, the fa-

ther would continue to represent the Russell knit apparel division for two additional years only in the State of Florida and the son, the plaintiff here, would be directly employed by Russell to represent the company in the states of Tennessee, North Carolina, Kentucky, Virginia, West Virginia, and for one account located in Cincinnati, known as "High Code Trading;" the commission to be paid to the plaintiff would be three percent of all sales in the territory; there would be no "house accounts" in the territory, meaning that Russell would be precluded from selling directly to any customer without paying commissions to plaintiff.

The above stated facts were undisputed. In addition, plaintiff contends that this agreement would be in force and effect until the plaintiff either died or retired, whichever occurred first, provided that he continued to produce.

The plaintiff testified as to this agreement in the following language:

A: Then we talked about my deal and the deal that we made was that I was to have a certain territory. It will be just like all of the—in the past. It would be three percent commission on that territory. There was to be no house accounts, and it would be a fence around that like—around the territory, and it would be good until I died or retired.

Now, after the whole thing was over with, I said, "Let me understand it"—and I was talking to Scott at that time.

Q: Just for the record you were talking about Scott Howell?

A: Yes. I was talking about Scott Howell. And I said, "Scott," I said, "Let me see if I understand this right." I said, "There was be a three percent commission. He said, "Right." I said, "There won't be any house accounts." He said, "Right." I said, "We will have a fence built around the territory." He said, "That's right." And I said, "This is good until I retire or die." He said, "As long as you produce." That was the words.

And he said, also, "If you want to, Jack, write up a contract. Hell, we'll sign it." I said, "Man, I trust you."

This evidence given by Jack Schneider was not categorically denied by Howell, whose testimony relating to this conversation included the following:

Q: Well, now do you recall that Mr. Jack Schneider said that he said to you, now, Scott, this is good until I retire or die?

A. No, sir. I do not recall that.

Q: Well, are you saying that you don't recall it, or he didn't say it?

A: I said I didn't recall it.

Q: So he could have said it?

A: Possible.

Q: It would certainly be natural that retirement would be on everyone's mind since it was sort of the purpose of the gathering, I believe you testified?

A: That's correct.

Schneider worked from 1972 until February, 1985 under the agreement reached in June of 1972, representing Russell in the territory assigned to him, and he continued to work from the same office in Nashville that his father established in 1951. His father before him and he together established as customers a great majority of the customers of Russell products in the territory according to the testimony of Scott Howell.

On two occasions between 1972 and February of 1985, Russell notified Schneider that it was modifying the three percent contract in some degree. On each occasion, Schneider objected but agreed to the modification. In his letter agreeing he noted that the changes were inconsistent with the agreement of 1972 which was to run "until my retirement." Russell did not respond to either statement made by Schneider that his contract was to run until his retirement.

The parties continued in the relationship until the fall of 1984 when Russell officials began suggesting to Schneider that his commission on sales made by Schneider's son, Drew, whom Schneider had now employed as a salesman, should be reduced to

two percent and, later, that Schneider divide his territory with Drew who would then draw his commissions directly from Russell. No agreement was made between the parties with respect to this matter and during the course of the discussion, Schneider had a telephone conversation with John Adams, the president of Russell's knit apparel division. Appellant relies upon portions of this telephone conversation, both as proof of the existence of the contract as he understood it, and as proof that Russell was estopped from denying the existence of the contract. The underscoring in the following quotation is by the appellant:

> John Adams: Well let me say this. I don't, Clarence [Abernathy] and I don't have a guarantee of a job at 4:30 this afternoon, but now let me, now that I've said that let me say what mine and Clarence's intentions are. Is that we need you, we want you we want you to stay with us, I don't feel though Jack we can make long standing company commitments, I mean take some ridiculous situation, you know, uh, somebody else comes in control totally, they can fire me ... right this minute ...
>
> Plaintiff: Well can they fire me with this documentation that I have? ... *which says retirement ...? Well I mean can they fire me too? I don't think so.*
>
> .    .    .    .    .
>
> John Adams: ... your territory stands out as being a high selling cost ... I mean there is nothing wrong with that and *I know about all of the agreements and everything in the past,* I am just saying that somebody is going to be looking for a cost cutting thing one of these days and if it ever gets to a point that they are ready to do something about ... and it will ... then I guarantee you it will and I know it will ... uh, they are not going to look at it from the standpoint of lets be concerned bout Jack because Jack is doing a good job and we want to keep him and he has got close relationship with customers....

The conversation did not result in any agreement between the parties. There-

after, the plaintiff filed his action for declaratory judgment and he was terminated by Russell on February 28, 1985. There was also evidence that on the afternoon before the termination, Russell had a clerk telephone to Schneider's office in Nashville and the clerk asked Schneider's secretary to give her the amounts sold to each of 24 of Schneider's customers and the name of the buyer for each customer. This information was furnished by Schneider's secretary. The next day Russell notifed Schneider and Schneider's customers that Schneider was terminated as of February 28, 1985.

## III. THE ISSUES

1. Was the district court in error in determining that the facts as shown by the testimony, the affidavits, and the depositions were insufficient to satisfy the Alabama law that requires that a plaintiff relying upon a lifetime employment contract is required to show an unequivocal offer of lifetime employment?

2. Whether the district court was in error in deciding that the proof offered by the plaintiff was insufficient to create an issue of fact as to the giving of special consideration in return for the lifetime employment contract as required by the Alabama law?

3. Whether there was any evidence or proof of the authority of the corporate officers to offer such a contract?

4. Whether the district court was in error in rejecting the plaintiff's estoppel argument?

## IV. DISCUSSION

■ 1. At the outset we note that this Court's opinion in *Chastain v. Kelly-Springfield Tire Co.,* 733 F.2d 1479 (11th Cir.1984), stated as follows:

> Under Alabama law, an offer expressly stating that the employment is "permanent" or for "life" will support a contract for the same. *Bates v. Jim Walter Resources, Inc.,* 418 So.2d 903 (Ala.1982); *Scott v. Lane,* 409 So.2d 791 (Ala.1982);

*National Union Life Ins. Co. v. Ingram,* 275 Ala. 310, 154 So.2d 666 (1963); *Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 186 So. 699 (1939).

The trial court in this case seems to have relied exclusively on *Chastain* for its decision that no "clear and unequivocal offer of permanent employment" was made. It will be remembered that the language which appellant relies on here was the oral conversation held between the plaintiff, his father, Scott Howell, the general manager of the division in which Schneider was to work and Gwaltney, the president and chief executive officer of Russell Corporation. At the conclusion of this discussion, which was for the purpose of engaging Jack Schneider to take on the representation of Russell in several states that his father had previously dealt with, the language expressly used by Schneider in his statement of the employment agreement included the words "it would be good until I died or retired" and, thereafter, upon repetition of all of the terms of the agreement, Schneider again said: "This is good until I retire or die" whereupon Howell said: "As long as you produce."

Significantly, in *Chastain,* which held in favor of the employer, this Court stated:

First, we note the obvious: Sides' statement did not promise employment to the commission salesman "as long as they wanted" or "as long as they desired." Instead, according to the plaintiff, Sides told the salesman that their "jobs was (sic) secure; that we would continue on like we had been ... if we did our jobs, kept our noses clean, didn't make waves and not sell to Goodyear and Kelly accounts.

Here, Schneider's testimony as to the conversation dealing with lifetime employment, which we must accept as true on a motion for summary judgment, clearly stated an agreement that Schneider would continue as the commission salesman under the stated terms "as long as he wanted" or, "as long as he desired," language which *Chastain* treated as sufficient under the Alabama law as outlined in *Alabama Mills, Inc. v. Smith, supra.* See, *Chastain, supra,* 733 F.2d 1479, 1482.

·Moreover, this Court in *Chastain* considered the context in which the offer of employment was made. Here, Russell Corporation, acting through its president and chief executive officer, E.C. Gwaltney, Jr., initiated the 1972 meeting with Kenneth Schneider and Jack Schneider by a letter addressed to Kenneth Schneider in which Gwaltney stated: "Pursuant to our earlier discussions, I feel that it is imperative at this time to make definite arrangements with both you and Jack." The 1972 meeting was for that specific purpose and, thus, it was a meeting held directly between the top officials of Russell Corporation and Jack Schneider, who agreed to utilize the going business that he and his father had built up for a period of nearly 30 years for the purpose of taking on the task of acting as commission agents for the sale of Russell products to customers, many of whom had originally been served through the efforts of the Schneiders.

The trial court's comment on the language of the agreement between the parties was: "Here, the words 'until I retire or die' were, according to plaintiff's testimony, his own rather than Howell's. Howell's reported [testified to under oath]: 'As long as you produce' does not seem to be the sort of unambiguous offer of lifetime employment Alabama courts have historically required." The fact that the language of retaining Jack Schneider until retirement or during his life was made by Schneider rather than by the Russell representative is entirely irrelevant, since the response "as long as you produce" amounted to an acceptance of all of the terms that Schneider had proposed and restated.

In treating a similar question as to the meaning to be given to the words used dealing with a contract for life, this Court in *Litman v. Massachusetts Mutual Life Ins. Co.,* 739 F.2d 1549 (11th Cir.1984), stated:

We likewise disagree with defendant's argument that Albro's promise was merely a "friendly assurance" or "statement of opportunity." At the minimum,

in light of Litman's unequivocal testimony that Albro promised him that fraud or breach of fiduciary duty [here failure to produce] would be the sole cause for termination of his contract, the proper interpretation of Albro's statements was a factual issue for determination by the jury.

739 F.2d at 1557.

We are satisfied that Schneider's testimony as to the terms of employment meet the Alabama requirement for proof of lifetime employment.

■ 2. As this Court has held in an Alabama case, a contract for life employment is "of an extraordinary type, requiring an independent substantial valuable consideration, and that authority to make it must be clear and not to be lightly inferred, 186 So. at 704." *Chastain*, 733 F.2d at 1484.

The trial court here found "no such independent consideration is apparent here. Plaintiff merely stepped into his father's shoes to do directly for defendant the same sort of work that he had been doing for defendant while in his father's employ. As noted above, he assumed no additional duties (above those his father had undertaken), nor did he relinquish the opportunity to sell for other manufacturers."

This statement by the trial court seems to assume that because the father had built up the good will of his agency for a period of 30 years and was willing to transfer it to his son, which the latter would then be able to use in his employment by Russell, nothing of value was given by the son in return for the promise of lifetime employment. It is undisputed that valuable customer relations had been established and improved during the tenure of Kenneth Schneider and his son prior to the 1972 meeting called

by Russell. It is therefore certainly an inference that could be drawn by a finder of fact that the utilization of this good will in connection with Jack Schneider's new contract was "of substantial value" and was independent of any service of selling that was to be performed by him.[1]

Schneider's position with respect to this new contract is to be contrasted with what it would have been had he simply called on Russell as an experienced salesman, but without any prior connection or contact with any customers of Russell Corporation's knit goods and sought employment as a salesman for the same territory. Instead of that, his father owned the business which he and his son, Jack, had built up over 30 years, including constantly repeated orders by old and new customers. Neither father nor son had any obligation to turn this good will or going business over to Russell Corporation. They did so, however, as a part of the agreement entered into at the 1972 meeting. Whether this consideration that flowed from Schneider to Russell Corporation was "substantial" is a matter of fact for a jury to determine. It appears to us that this is especially true because of the ambiguous language used by the Alabama Supreme Court in such situations. As an illustration, the court in *United Security Life Ins. Co. v. Lowell Gregory*, 281 So.2d 853, 201 So.2d 853 (1967), quoted from an earlier case, *Alabama Mills, Inc. v. Smith*, 186 So. 699, which said:

> ... "permanent employment" will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do and the latter shall perform the service satisfactorily. This seems to be the established rule in case the employee purchases the

---

1. An illustration of the fact that Russell considered the customer-connection of Schneider as having value is the action of Russell as described above, to-wit: At 4:30 p.m. on the afternoon of Feb. 27, 1984, Russell called Schneider's secretary to obtain the names of the buyers for Schneider's customers and the dollar amounts of the sales to each. At this time, Russell had not notified Schneider that he was being terminated, although the letter mailed to all of the customers announcing this termination was dated Feb. 27, 1984. Howell phoned Schneider on the morning of Feb. 28 and read him the letter of termination, to be effective on Feb. 28. Of course, a fact finder could infer that Russell wanted the information as to what persons were acting as buyers for the customers, and that this was information which Russell could probably not get after Schneider had been notified of his termination.

employment with a *valuable considera-tion* outside the services which he renders from day to day.

201 So.2d at 854 (emphasis added.)

The court also stated:

The expressions from this court as noted in the foregoing cases and others seem to be consistent with the majority approach as indicated by the Annotation at 35 A.L.R. 1432, supplemented at 135 A.L.R. 646, where it is stated that

... ordinarily, in the absence of additional express or implied stipulations as to duration, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes *no consideration* additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and that, therefore, a discharge without cause does not constitute a breach of such contract justifying recovery of damages therefor....

*Id.* 201 So.2d at 854 (emphasis added.) The interchangeable use by the Alabama Supreme Court of the words "consideration," "valuable consideration," "substantial consideration" and "consideration of substantial value," *National Union Life Ins. Co. v. Ingram,* 154 So.2d at 669, makes it inappropriate for a trial court to determine whether the consideration given in this case did or did not satisfy the requirements of the Alabama law.

■ 3. In granting summary judgment to the defendant, the trial court did not base its decision on, or even discuss, the lack of authority in the president and general manager to enter into the contract that Schneider testified to. Reference to the pre-trial stipulation between the parties indicates that the issue as to authority of the officers to enter into such a contract was stated as follows: "Plaintiff's alleged contract is void and unenforceable because plaintiff has failed to show that the alleged contract was made with the *actual* authority of Russell or of any of Russell's employees." (Emphasis added.) The pre-trial stipulation, therefore, did not deny that the

defendant either ratified the contract or that it was not estopped to deny it.

Appellee is incorrect in arguing, as it does, that the burden on Schneider was to prove that Howell had *actual* authority to bind Russell to a lifetime contract.

As stated in *Masters v. Cobb,* 431 So.2d 540 (Ala.1983):

In a case of this kind the central issue is one of authority of the agent to bind a principal to a contract of permanent employment. The authorities on the issue have been extensively quoted in the *Scott* and *Alabama Mills* cases and thus they need not be reproduced here verbatim. It suffices to state that in the case of lifetime employment such an agent as this who seeks to bind his corporation must have actual authority to do so *or his corporation must ratify the contract or be estopped to deny it....*

431 So.2d at 541 (emphasis added.)

The testimony at the hearing of the relationship between the parties, including the several times in which plaintiff made clear his contention of the lifetime nature of his employment and the failure during such times on the part of Russell to contradict such statements, and the evidence to the effect that other commissioned salesmen such as Schneider had consistently been employed under similar contracts during the 30 years of the relationship of the Schneiders with Russell, prevents us from deciding on this appeal that there is nothing in the record as submitted on the motion for summary judgment from which a finder of fact could find either a ratification or estoppel against Russell's denial of authority in Howell to make the contract in a conversation in which the president and chief executive officer participated.

4. The trial court did not address the issue of estoppel or ratification, as stated in the preceding paragraph. We do not believe it appropriate for this Court initially to determine whether there was sufficient evidence from which a jury could find in favor of the plaintiff on either of these contentions by the plaintiff.

5. The appellant also contends that the trial court abused its discretion in denying his motion to amend the complaint approximately a week before the case was set for hearing on summary judgment. After reviewing the record with respect to this matter, we conclude that the trial court did not abuse its discretion thereabouts.

## V. CONCLUSION

Because we consider that there have been raised by the pleadings testimony and depositions in this case, factual issues which should not have been disposed of on a motion for summary judgment, we conclude that the judgment must be reversed and the case remanded to the trial court for further proceedings.

REVERSED and REMANDED.