**Harvey L. KUNZMAN, Plaintiff,**

v.

**ENRON CORPORATION; Enron Energy Companies, and Northern Natural Gas Company, Defendants.**

No. C 94–3044.

United States District Court, N.D. Iowa, Central Division.

Sept. 13, 1995.

Lawrence Marcucci, Shearer, Templer, Pingel and Kaplan, West Des Moines, Iowa, for Plaintiff.

Neven J. Mulholland, Johnson, Erb, Bibb, Bice & Carlson, P.C., Fort Dodge, Iowa, and Kriste K. Sullivan and Janet L. Lachman, Enron Litigation Unit, Houston, Texas, for Defendant Enron.

**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 889

II. FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 890
 A. Uncontested Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 890
 B. Contested Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 890

III. STANDARDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 891

IV. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 893
 A. ADEA Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 893
 1. Kunzman's Age Discrimination Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . 893
 a. The Analytical Framework for Claims of Age Discrimination . . . . . 893
 b. The Prima Facie Case Under the ADEA in a Reduction in Force
 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 895
 2. Kunzman's Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 896
 3. Pretext For Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 901
 B. Age Discrimination Under Iowa Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 902
 C. Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 903
 1. Analytical Framework for Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . 903
 2. Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 904
 3. Non–Discriminatory Reasons for Firing and Pretext . . . . . . . . . . . . . . . . 904
 D. Contract Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 905

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 909

This lawsuit arises out of the layoff and termination of Plaintiff during a purported reduction in force by his employer in 1993. Plaintiff's complaint alleges that age was a determining factor in his termination in violation of both federal and state law. Plaintiff further asserts that he was retaliated against, in violation of both federal and state law, for filing a discrimination complaint with the Iowa Civil Rights Commission. Finally, Kunzman asserts a breach of a lifetime oral contract under Iowa law against Enron.

Defendants have moved for summary judgment on each of Plaintiff's five claims.[1] Defendants assert that Plaintiff cannot make out a *prima facie* case of age discrimination. Defendants further assert that even if Plaintiff can demonstrate a *prima facie* case, they have a legitimate reason for Plaintiff's termination: a reduction in force at the place of Plaintiff's employment. In addition, Defendants contend that they did not retaliate against Plaintiff for the filing of a discrimination claim. Finally, Defendants assert that Plaintiff did not have a lifetime oral contract with them.

## I. INTRODUCTION AND BACK-GROUND

On May 11, 1994, Plaintiff Harvey L. Kunzman filed his petition in the Iowa District Court for Cerro Gordo County against his former employer Defendant Enron Corporation ("Enron"), alleging age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Iowa state law, arising out of his selection for layoff and subsequent termination from Northern Natural Gas' Ventura, Iowa, facility.[2] Kunzman further alleges that he was fired in retaliation for his filing a complaint of age discrimination in violation of the ADEA and Iowa state law. Kunzman also alleges an Iowa common law breach of an oral contract claim. On June 8, 1994, Northern Natural Gas filed

a petition for removal of this case to federal court pursuant to 28 U.S.C. § 1441(b).

Enron has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on all of Kunzman's claims. First, Enron asserts that Kunzman cannot make out a *prima facie* case on his age discrimination claim. Specifically, Enron argues that, in this reduction in force case, Kunzman is unable to demonstrate that age, and not some other factor, was the reason for his discharge. Second, Enron contends that it has offered a legitimate reason for Kunzman's termination, that it was part of a legitimate reduction in its work force, which Kunzman is unable to rebut. Third, Enron asserts that Kunzman cannot make out a *prima facie* case of retaliation nor can he show that Enron's reasons for terminating him were grounded by an intent to retaliate against him. Here, Enron argues that Kunzman was placed at risk before he filed discrimination charges and thus Kunzman is unable to demonstrate a nexus between the protected activity and a retaliatory action. Finally, Enron contends that Kunzman cannot substantiate a breach of a lifetime oral contract claim against Enron. On this point, Enron argues that the statements upon which Kunzman relies as establishing a lifetime oral contract are insufficient to create such a contract.

A hearing on Enron's motion for summary judgment was held on September 7, 1995. At the hearing Plaintiff was represented by Lawrence Marcucci of Shearer, Templer, Pingel and Kaplan, West Des Moines, Iowa. Defendant Enron was represented by Neven J. Mulholland of Johnson, Erb, Bibb, Bice & Carlson, P.C., Fort Dodge, Iowa, and Kriste K. Sullivan and Janet L. Lachman of Enron Litigation Unit, Houston, Texas. The parties have filed thorough and extensive briefs in support of their respective positions. Counsel were exceptionally well prepared for oral argument and the arguments were both spirited and informative. This matter is now deemed fully submitted.

---

1. The court notes that Plaintiff's petition only has four counts because Plaintiff has combined his federal and state retaliation claims in a single count, count III.

2. For the sake of simplicity, the court shall refer to the Defendants collectively in this order as "Enron."

## II. FINDINGS OF FACT

### A. Uncontested Facts

For the purposes of this summary judgement motion only, the court finds the following facts:

The record reveals that the following facts are undisputed. Plaintiff Harvey L. Kunzman was employed by Defendant Enron as an Operator II in its compression plant in Ventura, Iowa. Kunzman is over the age of 40. He was born on February 28, 1945. Enron's Ventura facility included the compression plant and a liquid natural gas ("LNG") storage facility. When Kunzman was hired by Enron, its layoff policy was based on seniority. In July 1992, Kunzman was informed that Enron was going to change its policy of determining or rating certain employees from a seniority/bumping system to a performance and skills based policy. In late 1992, Enron decided to automate its Ventura facility. The effect of the automation would be a reduction in the work force at Ventura. As of December 1992, thirty-six employees were required in order to operate the Ventura facility. A committee determined that after the Ventura facility was automated, only thirty employees would be required there.

In 1992, Marc Phillips was hired by Earl Berdine, the Vice–President of Operations for Northern Natural Gas Company, to perform a series of consulting sessions with Enron employees. During a March 1992 session Phillips referred to certain people as "traditionalists."

Tom Mertz was the supervisor of the compression plant, and Byron Wood was the supervisor of the LNG facility. At the direction of their own supervisor, R.R. McGillivray, Mertz and Wood made a list of employees who would be retained in their employment in the Ventura facility if a reduction in employment force decision was made at that time. McGillivray relied on the recommendations of Mertz and Wood as to what employees to place on the at risk list.[3] The

six remaining employees were deemed "at risk" of a layoff if a decision were made on that day. The other employees who were declared to be at risk were Tony Hauge, Will Roth, Michael Thompson, Larry Treloar, and Mr. Larson. On December 3, 1992, Kunzman was informed that he was "at risk." Kunzman was told that he could improve the chances of retaining his job if he improved his skills. Kunzman commenced a training program for corrosion technician in 1993, but did not finish the program.

On June 1, 1993, Kunzman filed a complaint with the Iowa Civil Rights Commission in which he alleged he was being subjected to age discrimination. On June 21, 1993, Kunzman and seven other employees at the Ventura facility were declared to be surplus to the employment needs at the Ventura facility. At that time Kunzman was 48 years old. In addition to Kunzman, the seven other employees who were declared to be surplus were: Larry Treloar, age 40; Tony Hauge, age 49; Will Roth, age 51; Michael Thompson, age 43; Mr. Larson, age 25; Kelly McLaughlin, age 35; John Overgaard, age 50; and Ted Hall, age 41. Larry Treloar was offered and accepted a transfer to Enron's Paulina location. Treloar was an Operator II at the Ventura facility and had less seniority, nine years, with Enron at the time of his transfer than did Kunzman. Treloar had received a disciplinary suspension from Enron in May 1991 for theft of company property.[4] Kunzman was not offered a transfer to the Paulina location.

### B. Contested Facts

1. Whether, during an employee training session, a consultant hired by Enron, Marc Phillips, divided employees into groups according to the employee's age.

2. Whether Phillips referred to a group of workers, age 40 and over, as "old type fundamentalists/traditionalists."

3. Whether Manager McGillivray told workers present at the employee training session that a group of workers, age 40 and

---

3. McGillivray was not the manager of the Ventura facility in June 1992. The record, however, does not reflect when, after March 1992, he left the Ventura facility.

4. Treloar took a piece of plexiglass for use in his home.

over, had to change to "get with these younger guys."

4. Whether Kunzman's prior job was a permanent position.

5. Whether Kunzman informed Tom Mertz that he would be willing to accept a transfer from the Ventura facility in order to keep his job with Enron.

## III. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).[5] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Kunzman, and give him the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, Enron, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–

---

5. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Enron is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Kunzman is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir. 1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Kunzman fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Enron is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir. 1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (holding that there was a genuine issue of material

fact precluding summary judgment); *Johnson,* 931 F.2d at 1244.

With these standards in mind, the court turns to consideration of Enron's motion for summary judgment.

## IV. ANALYSIS

### A. ADEA Claim

Kunzman has brought age discrimination claims under the ADEA, 29 U.S.C. § 621 *et seq.* The analysis of an age discrimination in employment claim begins with examination of the goals and prerequisites for suit under the ADEA and determination of the proper allocation of the burdens of proof on such a claim.

#### 1. *Kunzman's Age Discrimination Claim*

■■■■ The ADEA's goal is to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Thus, the ADEA forbids employment discrimination against employees aged forty and older. 29 U.S.C. § 631(a); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448 (8th Cir.1993). It provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[6]

##### a. *The Analytical Framework for Claims of Age Discrimination*

■■■■ The allocation of the burden of proof in ADEA cases has been held to be the same as in cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e to 2000e–17 (1988). *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 778 (8th Cir.1995); *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448 (8th Cir.1993); *Beshears v. Asbill,* 930 F.2d 1348, 1353 nn. 6 & 7 (8th Cir.1991); *see also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 888–89 (9th Cir.1994) (citing *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1420 (9th Cir.1990)); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)); *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1425 n. 2 (10th Cir.1993) (citing *MacDonald v. Eastern Wyoming Mental Health Ctr.,* 941 F.2d 1115, 1119 (10th Cir.1991)); *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 180 (2d Cir.1992) (citing *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989)); *United States EEOC v. Century Broadcasting Corp.,* 957 F.2d 1446, 1450 (7th Cir.1992) (citing *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991)). Similarly, the burdens of establishing a *prima facie* case of discrimination are the same under the ADEA, Title VII, and § 1983. *Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487, 490–91 (8th Cir.1992), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Richmond v. Board of Regents of the Univ. of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992) (burden of showing *prima facie* case of discrimination is the same under Title VII, § 1981, § 1983, or the ADEA).

■■■■ It is axiomatic that employment discrimination need not be proved by direct evidence, and indeed, that doing so is often impossible, because, as the Supreme Court has said, "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1108 (8th Cir.) (citing

**6.** The ADEA prohibitions protect workers over age forty. 29 U.S.C. § 631(a). As originally enacted, the ADEA covered employees from 40 to 65 years old. Pub.L. No. 90–202, § 12, 81 Stat. 607 (repealed 1978). The maximum age was raised in 1978 to cover persons aged 40 to 70 years. Pub.L. No. 95–256, § 4, 81 Stat. 607 (repealed 1986). In 1986 Congress removed the upper age limitation entirely, Pub.L. No. 99–592, § 2, 100 Stat. 3342–43 (codified at 29 U.S.C. § 631(a)), except for bona fide mandatory retirement laws for firefighters and law enforcement officers, *Id.* §§ 3–4, 100 Stat. 3342–43 (codified at 29 U.S.C. § 623(i)), and tenure for college professors over age 70. *Id.* § 6, 100 Stat. 3344 (codified at 29 U.S.C. § 631(d)).

*United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Hutson,* 63 F.3d at 776. Thus, in employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and most recently in *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Gaworski,* 17 F.3d at 1108.

Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle the plaintiff to prevail unless contradicted and overcome by evidence produced by the defendant. *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). To establish a *prima facie* case of discrimination under Title VII, the ADEA or § 1983, the plaintiff must show that the defendant terminated the plaintiff under circumstances which gave rise to an inference of unlawful discrimination. *Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir.1995); *Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 945 (8th Cir. 1994); *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1242 (8th Cir.1991) (Title VII discriminatory discharge case). "Once established, the *prima facie* case entitles the plaintiff to a rebuttable presumption that intentional discrimination played a role in the adverse employment action." *Hutson,* 63 F.3d at 776; *Krenik v. County of Le Sueur,* 47 F.3d 953, 958 (8th Cir.1995); *Kobrin v. University of Minnesota,* 34 F.3d 698, 702 (8th Cir.1994).

If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the questioned employment decision for a legitimate, non-discriminatory reason. *White,* 985 F.2d at 435. The employer's explanation of its actions must be "clear and reasonably specific," *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir.1994) (citing *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749.

The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *White,* 985 F.2d at 436; *United States v. Johnson,* 28 F.3d 1487, 1494 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995); *Johnson,* 931 F.2d at 1242; *Brooks v. Monroe Systems For Business, Inc.,* 873 F.2d 202, 204 (8th Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1408 (8th Cir.1987). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."); *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994) (quoting *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749); *EEOC v. Cherry–Burrell Corp.,* 35 F.3d 356, 361 (9th Cir.1994) (quoting *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749); *Gaworski,* 17 F.3d at 1109 (quoting *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749); *Hicks v. St. Mary's Honor Ctr.,* 2 F.3d 265, 266 (8th Cir.1994) (quoting

*St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749); *Brooks,* 873 F.2d at 204 (submission by the employer of a discredited reason for discharging or failing to promote a person is itself evidence of discriminatory motive.).

In two recent decisions, the Eighth Circuit Court of Appeals has considered in more detail the plaintiff's burden to show discriminatory intent when the employer has offered a legitimate, non-discriminatory reason for its actions. *See Lidge–Myrtil v. Deere & Co.,* 49 F.3d 1308 (8th Cir.1995); *Krenik,* 47 F.3d at 958. In *Krenik,* the court held that

[t]o survive summary judgment at the third stage of the *McDonnell Douglas* analysis, a plaintiff must demonstrate the existence of evidence of some additional facts that would allow a jury to find that the defendant's proffered reason is pretext and that the real reason for its action was intentional discrimination. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. These additional facts may be limited solely to proof of pretext....

*Krenik,* 47 F.3d at 958; *Lidge–Myrtil,* 49 F.3d at 1311 (the plaintiff "must produce 'some additional evidence beyond the elements of the *prima facie* case' that would allow a rational jury to reject [the employer's] proffered reasons as a mere pretext for discrimination," quoting *Krenik* ). In *Krenik,* the court noted that the "additional facts" could be limited to evidence that would cast disbelief and a suspicion of mendacity upon the employer's proffered legitimate reasons, citing *St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2749, but the court held that the plaintiff must produce

some additional evidence beyond the elements of the *prima facie* case to support a finding of pretext. Thus, [plaintiff's] argument that she was entitled to a full trial once both parties had met their initial burdens fails as a matter of law.

*Krenik,* 47 F.3d at 959. In *Lidge–Myrtil,* the court held, first, that the plaintiff's abilities alone cannot rebut the employer's stated reasons for its action. *Lidge–Myrtil,* 49 F.3d at 1311. Next, the court rejected as inadequate plaintiff's "additional facts" in the form of a "single offhand hearsay comment by an unnamed co-worker" offered as proving dis-

criminatory animus on the part of the employer. *Id.* Finally, the plaintiff was unable to produce persuasive evidence of disparate treatment because she could identify no comparably situated employees not of her protected class who were treated differently. *Id.*

▮▮▮ The court will therefore consider, if Kunzman presents an adequate *prima facie* case, if he has also presented "additional facts" to rebut Enron's proffer of a legitimate, non-discriminatory reason for his discharge sufficient to create a genuine issue of material fact as to discriminatory intent. However, the finding of discriminatory intent is generally for the trier of fact. *Burger v. McGilley Memorial Chapels, Inc.,* 856 F.2d 1046, 1047 (8th Cir.1988).

### b. The Prima Facie Case Under the ADEA in a Reduction in Force Case

▮▮▮ The importance of the *prima facie* showing is that it creates the inference that the employer terminated the plaintiff for an impermissible reason. *Hardin,* 45 F.3d at 264. However, the *prima facie* case criteria differ for each type of employment decision. *Davenport,* 30 F.3d at 944; *Hervey v. City of Little Rock,* 787 F.2d 1223, 1231 (8th Cir. 1986). Thus, in a case alleging age discrimination, the usual elements of the *prima facie* case are: (1) that the plaintiff was a member of a protected group on the basis of his or her age; (2) that the plaintiff was performing his or her job at a level that met the employer's legitimate expectations; (3) that plaintiff was discharged; and (4) that the employer replaced or attempted to replace the plaintiff with a younger person. *Radabaugh,* 997 F.2d at 447; *Beshears,* 930 F.2d at 1353; *Raschick v. Prudent Supply, Inc.,* 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); *see also Rinehart v. City of Independence, Mo.,* 35 F.3d 1263, 1265–66 (8th Cir. 1994) (in an ADEA case, it is not necessary that the plaintiff be replaced with a person from outside the protected class, only that the plaintiff be replaced by a *younger* person).

However, as this case involves a discharge in the context of a purported reduction in

force, a further modification of the *prima facie* case is necessary. In the context of a reduction in force, the fourth element of the *McDonnell Douglas prima facie* case cannot be shown because the position is not filled by another or left open, but eliminated or combined with another position. *Hardin,* 45 F.3d at 264; *Hillebrand,* 827 F.2d at 364; *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1164–65 (8th Cir.1985). Thus, in *Holley,* the Eighth Circuit Court of Appeals held that the plaintiff in a reduction in force case must meet the first three requirements of the *McDonnell Douglas prima facie* showing and "must come forward with additional ... evidence that [race] was a factor in [the plaintiff's] termination." *Holley,* 771 F.2d at 1166; *see also Hardin,* 45 F.3d at 264; *Rinehart,* 35 F.3d at 1267–68 (this "additional showing" that age was a factor in the termination is not an element of the usual *prima facie* case under the ADEA, only for reduction-in-force cases); *Thomure v. Phillips Furniture Co.,* 30 F.3d 1020, 1024 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995); *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994).

> In most reduction in force cases,
>
> the evidence generally demonstrates that the company had some kind of plan to reduce expenses by eliminating jobs. These plans generally include objective criteria by which to determine which jobs will be eliminated and often include objective evidence of a business decline.

*Bashara,* 26 F.3d at 822; *see also Hardin,* 45 F.3d at 264–65 ("As we observed in *Hillebrand,* 827 F.2d at 367, most companies implementing a RIF have a stated plan to reduce expenses by eliminating jobs and they also provide company decision-makers with objective criteria by which to determine which jobs to eliminate."); *Gaworski,* 17 F.3d at 1109; *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 367. In both *Hillebrand* and *Gaworski* the Eighth Circuit Court of Appeals held that the absence of objective criteria to determine which jobs to eliminate and objective evidence of a business decline was sufficient evidence to make the additional showing that race had been a factor in the

plaintiff's termination. *Hillebrand,* 827 F.2d at 368; *Gaworski,* 17 F.3d at 1109–10.

■ However, on its most recent contact with this issue in *Hardin,* the Eighth Circuit Court of Appeals concluded that "[w]hen a company's decision to reduce its workforce is due to the exercise of its business judgment it need not provide evidence of financial distress to make it a 'legitimate' RIF." *Hardin,* 45 F.3d at 265; *Bashara,* 26 F.3d at 824–25 (no requirement that a company be failing financially before embarking on a RIF). The court went even further:

> [A] company does not need to provide objective criteria for determining who should be discharged to make the RIF "legitimate." Whether criteria [are] provided does not overcome the fact that the company made a business decision to reduce its workforce and therefore had a legitimate reason for terminating qualified employees.

*Hardin,* 45 F.3d at 265. However, even though a business judgment is sufficient to make a reduction in force "legitimate" under this standard, the employee must still show "additional evidence" that age was a factor in the employee's discharge under the reduction in force. *Id.* at 265. Thus, in *Hardin,* the court approved the following formulation of the *prima facie* case of a plaintiff alleging age discrimination in the context of a RIF:

> 1) [the plaintiff] was at least forty years old at the time of termination; 2) [the plaintiff's] job performance met the employer's legitimate expectations; 3) [the plaintiff] was terminated despite his performance; 4) [the plaintiff's] job continued to exist in its various parts; and 5) [the plaintiff's] age was a determining factor in defendant's actions.

*Id.; Bashara,* 26 F.3d at 823; *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir.1994); *Holley,* 771 F.2d at 1165.

### 2. *Kunzman's Prima Facie Case*

The court concludes that Kunzman has generated a genuine issue of material fact on his *prima facie* case of age discrimination in this reduction-in-force case. Enron concedes that the first three elements of the *prima facie* case are not in dispute here. Kunzman

was within the protected age group at the time of his termination, Kunzman's performance met Enron's expectations, and Kunzman was terminated.

As to the fourth element, whether Kunzman's job continued in its various parts, the record is clear that Kunzman's duties were absorbed by other Enron employees. Thus, the only sticking point on Kunzman's *prima facie* case is whether or not he has shown "additional evidence" that age was a factor in his discharge under the RIF. *Hardin,* 45 F.3d at 265. Here, Kunzman has proffered evidence in the form of statements purportedly made by Kunzman's supervisor, and an outside consultant. In particular, Kunzman alleges that, during an employee training session, manager McGillivray told a group of workers, age 40 and over, who had been segregated for the purpose of the training seminar that they had to change to "get with these younger guys." Kunzman has presented this evidence through the affidavits of two former co-workers, John Overgaard and Tony Hauge. At the same training session, the outside consultant hired by Enron, Marc Phillips, had purportedly referred to this group of workers over the age of 40 as "old type traditionalists/fundamentalists."

Enron, of course, hotly contests the existence of these statements and charges that Kunzman's raising them here is a "sham" issue. Enron asserts that both of these statements are "sham" issues because they have not previously been unearthed during the discovery process. Enron goes on to argue that the affidavits of Overgaard and Hauge both contradict the deposition testimony of Kunzman, and therefore should not be considered. *See Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir. 1983). As a secondary argument Enron asserts that these statements are insufficient to make the "additional showing" required by *Holley.* Enron argues that the aforementioned statements are merely "stray remarks" which are irrelevant to the "additional showing" requirement. Regarding to the McGillivray's statement, Enron argues that the statement is irrelevant because McGillivray was no longer in charge of the Ventura facility at the time of Kunzman's termination.

With respect to the Phillips' statement, Enron contends that Phillips was not an employee of Enron, but merely a consultant hired to conduct a series consulting sessions. As such, Enron asserts that Phillips' statement cannot be attributed to Kunzman's supervisor, Mertz, if he was present at the time the statement was made. The court will address each of Enron's contentions in turn, commencing with an analysis of whether the court should consider the affidavits of Overgaard and Hauge.

The affidavits of Overgaard and Hauge submitted by Kunzman are an attempt by him to generate a material issue of fact as to whether or not age played a role in the RIF. As required by Rule 56(e), Kunzman must go beyond the pleadings, and by affidavit designated "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. However, Enron asserts that these affidavits should not be considered or allowed to create a genuine or substantial factual issue sufficient to defeat Enron's summary judgment motion because they purportedly contradict the deposition testimony of Kunzman.

In *Camfield,* the Eighth Circuit Court of Appeals had to decide whether the conflict between a last minute affidavit and the affiant's earlier deposition testimony created a genuine issue as to any material fact, thus precluding the entry of summary judgment for defendant under Federal Rule of Civil Procedure 56. *Id.* at 1364. The court noted a split in the circuits on this issue. *Id.* (comparing the conclusions in *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540 (9th Cir.1975), which concluded that the conflict created by a later affidavit was not a genuine issue but a sham, and *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir.1980), which concluded that a genuine issue can be raised by a conflicting affidavit in certain circumstances). The court in *Camfield* found that other courts had considered various factors that might be adequate to fall within an exception to the rule that conflicting affidavits do not create a genuine issue of fact. *Id.* Such factors included whether the inconsistency created by the affidavit existed within the deposition itself, or whether the affidavit

explained certain aspects of the prior deposition, citing *Kennett–Murray,* 622 F.2d at 894–95, lack of access to material facts or newly discovered evidence, citing *Office Supply Co. v. Basic/Four Corp.,* 538 F.Supp. 776, 785–86 (E.D.Wis.1982), and lack of inherent inconsistency with the prior deposition, confusion in the deposition, and plausibility of the assertions in the affidavit, citing *Letson v. Liberty Mut. Ins. Co.,* 523 F.Supp. 1221, 1230 (N.D.Ga.1981). *Id.* Finding none of these circumstances present in the case before it, the court ruled that the affidavit did not create a genuine but only a sham issue of fact. *Id.* at 1365.

Subsequent appellate decisions in this circuit have sometimes read *Camfield* as stating the rule that courts will not allow an affidavit in conflict with earlier sworn testimony to create an issue of fact. *See, e.g., Schlup v. Delo,* 11 F.3d 738, 742–43 (8th Cir.1993) (concluding that same rule should apply in the context of *habeas corpus* litigation); *Adams v. Greenwood,* 10 F.3d 568, 572 (8th Cir.1993) ("an affidavit denying what is established by one's own evidence ... does not preclude summary judgment"). However, other decisions have observed exceptions to the rule. *See, e.g., Garnac Grain Co., Inc. v. Blackley,* 932 F.2d 1563, 1568 (8th Cir.1991) (in *Camfield,* "[w]e noted that the affidavit presented by the plaintiff's president failed to 'explain aspects of his deposition testimony, nor [did] the deposition reflect any confusion on Camfield's part that ... require[d] explanation,'" and extending the holding with these exceptions to an affidavit submitted by a nonparty); *Kim v. Ingersoll Rand Co.,* 921 F.2d 197, 199 (8th Cir.1990) (in *Camfield,* "we held in the context of summary judgment that unless a party explains the conflict in his own testimony, discrepancies in testimony do not create credibility issues for a jury when the district court perceives a readily apparent sham," and finding adequate explanation in the plaintiff's trial testimony of the discrepancy with prior testimony).

The court concludes that the rule in *Camfield* is most fairly stated to be that

the Eighth Circuit Court of Appeals held [in *Camfield* ] that an affidavit inherently contradicting the prior deposition testimony of the affiant and containing no explanation or clarification for the disparity fails to create a genuine issue of fact.

*Landmark Bank of St. Charles County v. Saettele,* 784 F.Supp. 1434, 1439 (E.D.Mo. 1992). Decisions of the Seventh Circuit Court of Appeals, which has a rule similar to the one stated in *Camfield,* also stress the existence and plausibility of the affiant's explanation of the differences between his prior testimony and that found in the affidavit. *See, e.g., Unterreiner v. Volkswagen of Am., Inc.,* 8 F.3d 1206, 1210 (7th Cir.1993) (" 'A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart,' " quoting *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988)); *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1315 (7th Cir.1989) (affidavit in civil case must explain apparent inconsistency with deposition testimony in order to create an issue of fact on summary judgment); *Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320,* 773 F.2d 857, 861 (7th Cir.1985) (affidavits did not create factual issue precluding grant of summary judgment where they contradicted earlier deposition testimony without explaining the contradiction or attempting to resolve the disparity).

▪ Here, by its very definition, the rule in *Camfield* is inapplicable here because the affidavits of Overgaard and Hauge do not contradict Kunzman's deposition testimony. Enron points to the following deposition testimony as being contradictory to the statements contained in the Overgaard and Hauge affidavits:

Q. Okay. Did Mr. Mertz ever say or do anything else that suggested he was biased against older workers?

A. In the process of eliminating seniority, this left an opening to eliminate older, more senior employees.

. . . .

Q. Okay. Have you ever heard Mr. Mertz say anything negative about older workers?

A. No.

Kunzman Dep. at p. 129. The Overgaard and Hauge affidavits, however, do not refer to any statements made by Mertz, but instead refer to the statements made by Phillips and McGillivray. The court is thus required to consider the Overgaard and Hauge affidavits in determining whether Kunzman has generated a material question of fact.

The court, alternatively, understands Enron to have argued at oral argument that these statements at issue are merely "stray remarks" which are irrelevant to the "additional showing" requirement. Therefore, the court must determine whether the statements fall within the framework of the stray remarks doctrine.

■ The stray remarks doctrine has its genesis in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Comments suggesting that the employer may have considered impermissible factors are often relevant to a disparate treatment claim. *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir.1990). "On the other hand 'stray' remarks are insufficient to establish discrimination." *Id.* (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 277 and 280, 109 S.Ct. 1775, 1791, 1804–05, 1806, 104 L.Ed.2d 268 (1989)).

A number of decisions have held that specific statements of employees are "stray remarks" and, thus, not evidence of discrimination. *See e.g., Turner v. North American Rubber, Inc.,* 979 F.2d 55, 58–59 (5th Cir. 1992) (reference by boss to "three young tigers" being sent to assist plaintiff more than one year before his discharge held not related to plaintiff's age or his discharge); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 378–79 (5th Cir.1991) (comment by retired president of corporation that his son who succeeded him would "need to surround himself with people his age" held to be a stray remark because of the vagueness, remoteness in time and administrative hierarchy to personnel

decision), *cert. denied sub nom., Guthrie ex. rel. Guthrie v. Tifco Indus.,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) (remark by decision maker that he chose another individual over plaintiff because the other individual was "a bright, intelligent, knowledgeable young man," is a stray remark); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314–16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant); *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria even when such statements are made by the decision maker in issue.").

■ There appears to be no unified test for determining whether certain statements attributable to an employer fall within the parameters of stray remarks doctrine. Rather, as the above cases demonstrate, courts look to the relationship between the remarks and the decisional process, the age-based substance of the statements, the specificity of the statements both with regard to the actual employment decision at issue such as hiring, promotion or termination, as well as the relationship to the remark and the plaintiff's situation, and remoteness in time to the personnel decision. Several recent decisions from the United States Court of Appeals for the Eighth Circuit, *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444 (8th Cir.1993); *Kehoe v. Anheuser–Busch, Inc.,* 995 F.2d 117 (8th Cir.1993); *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541–42 (8th Cir.1991); *Beshears v. Asbill,* 930 F.2d 1348 (8th Cir.1991); *Blake v. J.C. Penney Co., Inc.,* 894 F.2d 274, 276–78 (8th Cir.1990), substantially assist in defining the contours of the stray remarks doctrine in our circuit.[7]

---

7. In *Radabaugh,* 997 F.2d at 448, the court affirmed the trial court's denial of Zip Feed's post trial motions, on the grounds that the jury should not have been given a Price Waterhouse instruction and that the evidence was insufficient to support the jury's verdict of age discrimination, the court analyzed the following statements

made by Zip Feed management employees: the president of Zip Feed repeatedly made the statement that the company was "young, mean and lean;" his suggestion made sometime after discharging Radabaugh that Radabaugh "might want to consider retiring;" and his statement that Radabaugh "should have seen this coming

■ Turning first to the statement by McGillivray, it is obvious that McGillivray was the final decisionmaker regarding which Enron employees would be labeled at risk. It was he who requested that Wood and Mertz draw up names of Enron employees who would be retained in the event of a reduction in force at the Ventura facility. The facts here indicate that McGillivray did not act alone but relied heavily on the recommendations of Mertz and Wood. In a factually similar case, *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir.1991), the Eighth Circuit focused on comments of individuals "closely involved in employment decisions" or "who actively participated in the personnel decisions at issue." *Id.* at 1354. The court held that the statement by the president of the employer that "older employees have problems adapting to changes and to new policies," and a statement by another official involved in the employment decisions that plaintiff's position "had been offered to a younger man and explained that younger people were more adaptable" to corporate policies "were not stray or random comments: they were made during the decisional process by individuals responsible for the very employment decisions in controversy." *Id.*

Similarly, in *Holmes v. Marriott Corp.*, 831 F.Supp. 691 (S.D.Iowa 1993), this court concluded that statements concerning the plaintiff's age made by the plaintiff's immediate supervisor, who was not the final decisionmaker, were not stray remarks, but instead were probative evidence establishing discriminatory intent. *Id.* at 707–08. Here, in contrast, because one of the comments at issue was actually uttered by the final decisionmaker, the remark must be deemed as probative, if not more, on the issue of the employer's discriminatory animus toward older workers. Although McGillivray was no longer at the Ventura facility in June, when the layoffs occurred, he was the individual responsible for drawing up the at risk lists from which the surplus employees were drawn. Thus, any animus or discriminatory intent on his part toward older workers was carried forward when the employee at risk lists were employed in determining the En-

when the (26 year old) nutritionist was hired." *Id.* at 449. The court held that these statements, in addition to other evidence presented by Radabaugh reflected "a discriminatory attitude on the part of the persons responsible for the decision to discharge him. This evidence was sufficient to support a finding that a discriminatory animus was a motivating factor in Zip Feed's decision." *Id.* at 450.

In *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541–42 (8th Cir.1991), the court discussed several comments made to Frieze by Boatmen employees which Frieze contended created an inference of age discrimination. Id. at 541. Four years prior to Frieze's discharge, Edwin Hartzler, who discharged Frieze, told him that he "waited too long ... to start [his] efforts towards becoming president of a bank and [Frieze] would never make it." *Id.* Hartzler had not yet become president at the time of the statement and made it in the context of a general discussion with Frieze about personal goals. *Id.* Jerry Martin, a senior vice president and the bank's cashier, also told Frieze that he "was too old and ... had too little rank ... [to become] president of a bank." *Id.* at 541. When Frieze was discharged by Hartzler, Hartzler "suggested Frieze could not work within the bank's framework." *Id.* Regarding these various statements, the court held that:

Martin's and the cashier's comments do not create a reasonable inference of age discrimi-

nation because Martin and the cashier did not take part in the decision to discharge Frieze.... Hartzler's statement about Frieze's chances to become president of a bank does not create a reasonable inference of discrimination because Hartzler made this stray remark more than four years before he discharged Frieze.... Similarly, Hartzler's statements about Frieze not being able to fit into the bank's framework are too vague to create a reasonable inference of age discrimination.

*Frieze*, 950 F.2d at 541–42 (citations omitted). In *Kehoe v. Anheuser–Busch, Inc.*, 995 F.2d 117 (8th Cir.1993), the court reversed the trial court's granting of summary judgment; holding that the employee had made out a prima facie case of age discrimination by generating material issues of fact as to whether reasons for the discharge were pretextual. *Id.* at 119–20. A portion of the evidence relied upon by the court in reversing the district court were statements made by the plaintiff's senior manager that he and an older co-worker were "moochers," a phrase which a co-worker who submitted an affidavit on behalf of the plaintiff "interpreted as equating Mr. Kehoe with someone who is retired." *Id.* at 119. Finally, in *Blake v. J.C. Penney Co., Inc.*, 894 F.2d 274, 276–78 (8th Cir. 1990), statements that plaintiff was a "senile old woman" and "senile old thing" were held to be evidence of age discrimination where employer tolerated such age-directed insults. *Id.* at 278.

ron employees who would be terminated. If the decision were otherwise, an employer could easily circumvent civil rights law by having an employee make decisions regarding future actions based on discriminatory criteria, but then transfer that employee prior to the time the plan is implemented.

The court finds that McGillivray's statement alone generates a material fact question on the issue of whether Kunzman can fulfill the "additional showing" requirement necessary to establish a *prima facie* case of age discrimination. It is therefore unnecessary for the court at this time to determine if the statement attributed to Phillips falls within the stray remark camp.[8] Although McGillivray's statement, viewed in the light most favorable to Kunzman, could be found by a reasonable jury to demonstrate Enron's animus toward older employees, the court recognizes the narrow reed upon which Kunzman has staked his case. It literally stands or falls depending solely upon who the fact finder believes as witnesses, Overgaard and Hauge, or McGillivray.

Therefore, the court concludes that Kunzman has generated, albeit ever so slightly, a material fact question as to whether age bias played a determining role in the reduction in force at Enron's Ventura facility. Enron is therefore not entitled to summary judgment on Kunzman's age discrimination claim under the ADEA on the ground that Kunzman has not made out a *prima facie* case of age discrimination in a reduction in force setting.

### 3. Pretext For Discrimination

Enron argues, alternatively, that even if one assumes that Kunzman has made out his *prima facie* case, his claim must still fail on the ground that he is unable to generate a material question of fact on the third prong of the *McDonnell Douglas* analysis. Enron has met its burden of articulating a legitimate, nondiscriminatory reason for its employment decision. Here, Enron asserts that its decision to terminate Kunzman was

part of a legitimate RIF. Because Enron has articulated a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination created by the plaintiff's establishment of a *prima facie* case "drops from the picture." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749; *Kobrin,* 34 F.3d at 702.

Because Enron has responded to Kunzman's *prima facie* case with evidence of a legitimate nondiscriminatory reason for its employment decision, Kunzman retains

> the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Here, because Kunzman has presented no direct evidence of intentional discrimination, the critical summary judgment inquiry is whether he came forward with sufficient evidence that Enron's nondiscriminatory reason is pretextual, that is, " 'unworthy of credence,' to permit the trier of fact to find that a discriminatory or retaliatory reason motivated the discharge." *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994). This is the critical inquiry because:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination....

*Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 (emphasis in original).

8. The court notes that in *Hardin v. Hussmann,* 45 F.3d 262, 266 (8th Cir.1995), the Eighth Circuit held recently that a statement made by a non-decision maker, in the presence of a decision maker, when returning an old text that "such an antiquated book should be kept out of sight as it might give their customers the wrong image," could when combined with another relevant comment demonstrate that the defendant employer "harbored a company wide animus toward older workers." *Id.*

As the Eighth Circuit recently noted in *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir.1995), that in contrast to the *prima facie* stage: "[a]t the pretext stage, by way of contrast, the question is much more focussed: Has the plaintiff shown that the explanation extracted from the defendant by virtue of the prima facie case is a pretext for discrimination?" *Id.* While the Eighth Circuit affirmed the granting of summary judgment in *Hutson*, 63 F.3d at 779, the court here concludes that Kunzman has generated a material question of fact on the issue of pretext which obviates the granting of summary judgment on Kunzman's ADEA claim. In *Hutson*, the plaintiff relied on two memorandums written by individuals not involved in the decision to terminate the plaintiff, as well as statement by a prior supervisor who was not involved in the decision to terminate him. *Id.*, at 779. The court noted that there was no evidence connecting those memoranda to the plaintiff's supervisor's decision. *Id.* Moreover, both memoranda were written nearly a decade prior to the plaintiff's discharge. *Id.* The evidence in *Hutson* evidence is considerably weaker than here, where the statement relied on by Kunzman was made by McGillivray, the person who ultimately had responsibility for placing employees on the at risk list from which employees would be drawn for termination.

Kunzman's arguments on this point rely on the same statements that the court examined above in the *prima facie* analysis. Although, the court concludes that McGillivray's statement alone raises a material fact question that the proffered reason for terminating Kunzman was pretextual in nature, as noted above, the court recognizes the slimness of Kunzman's case. Therefore, because Kunzman has generated a material fact question on the third prong of the *McDonnell Douglas* analysis on the question of pretext, the court shall also deny summary judgment against Kunzman on this ground.

## B. Age Discrimination Under Iowa Law

■ In the past, the Iowa Supreme Court has applied federal principles and analytical framework to civil rights cases under Iowa Code Ch. 216. *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893–94 (Iowa 1990) (in the past, the Iowa Supreme Court has applied federal principles and analytical framework to civil rights cases under Iowa Code Ch. 216); *Hulme v. Barrett*, 449 N.W.2d 629, 631–33 (Iowa 1989) (civil rights cases brought under chapter 601A (now 216) will be "guided by federal law" and "federal cases"); *King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601 (Iowa 1983) (same). However, the federal act does not preempt state age discrimination laws, so that the state court looks to its own act to determine if plaintiff is a protected person. *Hulme*, 449 N.W.2d at 631.

■ Membership in the protected class is age-neutral under Iowa Code Ch. 216, which prohibits discrimination in employment "because of age" of an employee, with the exception that under Iowa Code § 216.6(3), persons under eighteen years of age are not covered if they are not considered by law to be adults, and under Iowa Code § 216.6(5), the employee is over forty-five years of age in an apprenticeship program. *Hulme*, 449 N.W.2d at 632.

■ Under Iowa's age discrimination law, Iowa Code Ch. 216, the plaintiff establishes a *prima facie* case of age discrimination if the plaintiff shows that he or she is a member of the protected age group, the plaintiff was qualified for the job he or she was performing, the plaintiff was discharged, and the plaintiff was replaced by a younger person who had comparable or lesser qualifications. *Landals*, 454 N.W.2d at 894; *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 453 (Iowa 1989). However, as do federal courts of this circuit in a reduction-in-force case, Iowa courts recognize that

the employee cannot rely solely on termination to establish a *prima facie* case when an employer makes cutbacks due to economic necessity. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir.1985). Nor is it sufficient for an employee to show only that she was the victim of a cutback in the labor force necessitated by depressed economic conditions and that the job was combined into the duties of a younger employee to meet the requirements of a pri-

ma facie case. *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980). The plaintiff must come forward with additional evidence that age was a factor in her termination. *Duffy [v. Wheeling Pittsburgh Steel Corp.],* 738 F.2d [1393,] 1395 [ (3d Cir.), *cert. denied,* 469 U.S. 1087, [105 S.Ct. 592, 83 L.Ed.2d 702] (1984) ].

*Wing v. Iowa Lutheran Hosp.,* 426 N.W.2d 175, 178 (Iowa Ct.App.1988). In *Wing,* the "additional evidence" that age was a factor in the discharge of the plaintiff despite the reduction in force was that a younger person took over the plaintiff's former responsibilities, and all of the other employees retained in her department following her departure were also younger than the plaintiff, had substantially less time on the job, and were making substantially less per hour than the plaintiff. *Id.*

■ In the present case, Kunzman is a member of the protected class under the Iowa age discrimination statute. The court also recognizes that Kunzman at least arguably has shown the other elements of his *prima facie* case. He was qualified for his position in the Ventura facility, he was discharged, and he has come forward with additional evidence that age was a factor in his termination.

■ The court therefore turns to the next stage in the analysis of Kunzman's state-law age discrimination claim, which, as under federal law, is consideration of the defendant's proffered reasons for the discharge and attempts of the plaintiff to rebut that reason as pretextual. The framework for that analysis under Iowa law is the same as under federal law. *Landals,* 454 N.W.2d at 893–94; *Hulme,* 449 N.W.2d at 631–33; *King,* 334 N.W.2d at 601. Suffice it to say that Enron has offered, and Kunzman has

challenged, a legitimate, non-discriminatory reason for Kunzman's discharge. Kunzman need not show that age was Enron's sole or exclusive consideration, but must prove that age made a difference or was "a determinative factor" in the employer's decision. *Hulme,* 449 N.W.2d at 632 (citing *Smithers v. Bailar,* 629 F.2d 892, 897 (3d Cir.1980)). As with Kunzman's federal age discrimination claim, there is a genuine issue of material fact on these issues on his state-law age discrimination claim. Defendants are therefore not entitled to summary judgment on Kunzman's state-law age discrimination claim.

## C. Retaliation Claim

### 1. Analytical Framework for Retaliation Claim

■ Enron further moves for summary judgment on Kunzman's claim of retaliatory firing in violation of Iowa Code § 216.11 and the ADEA.[9] The Iowa Supreme Court has applied the same analytical framework to retaliation claims under Iowa Code 216 as applied to federal claims under the ADEA. Kunzman bears the initial burden of establishing a *prima facie* case of reprisal. *See Hulme v. Barrett,* 449 N.W.2d 629, 633 (Iowa 1989). This burden requires Kunzman to show: 1) he was engaged in statutorily protected activity; 2) he suffered adverse employment action; and 3) a causal connection between the two. *Hulme,* 449 N.W.2d at 633; *Gary v. Heritage Nat. Healthplan Serv.,* 485 N.W.2d 851, 856 (Iowa Ct.App.1992); *see Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) (applying same standard); *Jackson v. Saint Joseph State Hosp.,* 840 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). Once

---

9. The ADEA provides, in pertinent part, that [i]t shall be unlawful for an employer to discriminate against any of his [or her] employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.
29 U.S.C. § 623(d). Iowa Code § 216.11 similarly provides in, pertinent part, that

[i]t shall be an unfair or discriminatory practice for:
....
2. Any person to discriminate or retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, obeys the provisions of this chapter, or has filed a complaint, testified, or assisted in any proceeding under this chapter.

**904**

Kunzman succeeds in making a *prima facie* case, the burden shifts to Enron to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Gary,* 485 N.W.2d at 856; *Womack,* 619 F.2d at 1296.

■ If Enron establishes such a reason for terminating Kunzman, the ultimate burden of persuading the trier of fact that Enron terminated Kunzman in retaliation for asserting his rights under Iowa Civil Rights Act or the ADEA remains with Kunzman, and he must show by a preponderance of the evidence that the articulated reason was pretextual. *See Gary,* 485 N.W.2d at 856.

### 2. Prima Facie Case

The Eighth Circuit Court of Appeals has applied the same three-prong *prima facie* showing that the Iowa courts apply in considering retaliation claims in a variety of employment retaliation cases. *See, e.g., Schweiss v. Chrysler Motors Corp.,* 987 F.2d 548, 549 (8th Cir.1993) (three-prong *prima facie* showing of retaliation for reporting violations to OSHA); *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir. 1992) (same three-prong showing in ERISA retaliation case); *Valdez v. Mercy Hosp.,* 961 F.2d 1401, 1403 (8th Cir.1992) (same showing in case alleging retaliatory discharge for filing Title VII race discrimination claim); *Tart v. Levi Strauss and Co.,* 864 F.2d 615, 617 (8th Cir.1988) (same showing in case alleging retaliation for filing a sex discrimination claim with the EEOC); *Jackson v. Missouri Pac. R.R. Co.,* 803 F.2d 401, 406–07 (8th Cir.1986) (same showing for retaliation for filing race discrimination claims under § 1981 and § 2000e); *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 416 (8th Cir.1984) (retaliation claims brought under § 1981 require same three-prong *prima facie* showing as those brought under Title VII); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980), (same showing in case alleging retaliation for filing a Title VII complaint of race discrimination), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

Here, Enron does not dispute that Kunzman's act of filing a complaint with the Equal Employment Opportunity Commission concerning age discrimination constitutes protected activity, nor that he was subsequently subjected to an adverse employment action. Kunzman has therefore shown two of the necessary prongs for establishing a *prima facie* case of retaliation.

■ The third prong of the showing, causal connection, may be met, for example, by "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Schweiss,* 987 F.2d at 549 (quoting *Rath,* 978 F.2d at 1090) (discharge followed report to OSHA by only four days); *see also Rath,* 978 F.2d at 1090 (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); *Keys v. Lutheran Family and Children's Serv. of Missouri,* 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); *Womack,* 619 F.2d at 1296 (twenty-three days sufficient proximity for causal connection).

■ In the present case, Kunzman has demonstrated the temporal proximity between his challenge to conduct he believed to be age discrimination in Enron's Ventura facility and his employment termination. On June 1, 1993, Kunzman filed a charge with the Iowa Civil Rights Commission concerning the way he had been treated by Enron. Less than three weeks later, on June 21, 1992, Kunzman was terminated. This closeness in time between Kunzman's discharge and his complaint to the Iowa Civil Rights Commission creates an inference of a retaliatory motive on the part of Enron. Therefore, Kunzman has established at least a genuine issue of material fact on the elements of his *prima facie* case of retaliation.

### 3. Non–Discriminatory Reasons for Firing and Pretext

Enron contends that even if Kunzman can establish his *prima facie* case of retaliatory firing, Enron has met the second part of the test by articulating a legitimate, non-discrim-

inatory reason for its decision to terminate Kunzman's employment. Again Enron asserts that Kunzman was terminated as a result of a RIF at the Ventura facility.

Kunzman's response is to offer more than the timing of his termination. He has also submitted a statement purportedly made by his supervisor, Mertz, angrily questioning him as to why he filed the discrimination charges and Mertz's subsequent offering of a transfer to another employee on the surplus list while ignoring Kunzman. The court notes that the Eighth Circuit has recently viewed statements far more innocuous than that of Mertz's as evidencing animus. *See O'Bryan v. KTIV Television*, 64 F.3d 1188, 1194–95 (8th Cir.1995). In *O'Bryan*, the Eighth Circuit pointed to two statements "from which a retaliatory motive could be inferred." *Id.* First, at a meeting of defendant's salespersons, plaintiff's supervisor allegedly told the whole sales staff that plaintiff had filed discrimination charges against defendant and that the charges had no merit. *Id.* In the second statement, made at the time of plaintiff's termination, plaintiff's supervisor stated to plaintiff: "[w]e wish you well, Paul, but since there is a claim being carried before the Sioux City Human Rights Commission we are asking you not to be a visitor to the station at all and I think you'll understand the reason for that." *Id.* The Eighth Circuit went on to conclude that while these two statements, "standing alone, certainly could be interpreted benignly," it was error to grant summary judgment on plaintiff's retaliation claim in light of evidence including the prior work performance reports, plaintiff's supervisor's statements, and the close temporal proximity between plaintiff's protected conduct and plaintiff's termination. *Id.*

 In the instant case, there exists evidence beyond that introduced to establish the *prima facie* case, which tends to suggest Enron's proffered reasons were mere pretext. Kunzman has produced evidence that prior to the filing of his complaints, he was deemed to be performing at least adequately in his position as an Operator II at the Ventura facility. Immediately following the filing of his administrative complaint, howev-

er, Kunzman was passed over for a job transfer by Mertz, and was subject to what may be deemed harassment from Mertz. It must be mentioned that Kunzman and the employee offered the transfer, Larry Treloar, were both Operator II's at the Ventura facility. Kunzman, however, had more seniority than Treloar and had not been subjected to disciplinary measures for theft of company property as had Treloar. Although there may well be innocent explanations for both of Mertz's actions, " '[o]ur task at the summary judgment stage, however, "is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." ' " *O'Bryan*, 64 F.3d at 1194 (quoting *Davis v. Fleming Cos.*, 55 F.3d 1369 (8th Cir.1995)). Thus, if proven at trial, such incidents would bear on the pretext issue.

Therefore, the court concludes that Kunzman has presented sufficient evidence to raise a material fact question concerning whether Enron's documented reason for his discharge was a pretext and therefor Enron is not entitled to summary judgment as to Kunzman's retaliation claims.

### D. Contract Claim

Finally, Enron moves for summary judgment on Kunzman's breach of contract claim. Kunzman asserts that he had a valid lifetime oral employment contract with Enron which Enron allegedly breached when it terminated his employment with Enron. Enron asserts that Kunzman cannot establish that he has a lifetime oral contract for employment with it.

 Under Iowa law, a contract for permanent employment that is indefinite as to time of duration, and one in which the employee merely promises to perform services, is terminable at will by either party, with or without cause. *Stauter v. Walnut Grove Prods.*, 188 N.W.2d 305, 311 (Iowa 1971); *see also Hanson v. Central Show Printing Co.*, 256 Iowa 1221, 1224, 130 N.W.2d 654, 656 (1964); *Lewis v. Minnesota Mut. Life Ins. Co.*, 240 Iowa 1249, 1259, 37 N.W.2d 316, 322–24 (1949); *Faulkner v. Des Moines Drug Co.*, 117 Iowa 120, 122, 90 N.W. 585, 586 (1902). "In a contract of employment which by its express terms is for a

definite time or to last until a definite day, the employer may not discharge an employee prior to the stated time unless cause is shown based upon the employees's failure to perform in accordance with the contract of hire or there is some reason for discharge expressly provided in the contract." *Wolfe v. Graether,* 389 N.W.2d 643, 652 (Iowa 1986); *see Allen v. Highway Equip. Co.,* 239 N.W.2d 135, 140 (Iowa 1976). Where the employee offers consideration in addition to services, "a contract for permanent or lifetime employment is valid and enforceable and continues to operate so long as the employer remains in business and has work for the employee once the employee performs competently." *Stauter,* 188 N.W.2d at 311 (emphasis added); *see Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983) (holding that a promise of lifetime employment does not change the at-will nature of hiring "in the absence of of some kind of additional consideration supplied by the employee which is uncharacteristic of the employment relationship itself."); *see also Peterson v. Beebe Medical Ctr.,* No. 91C–07–147, 8 IER Cases 10, 12, 1992 WL 354087 (Del.Sup.Ct. Nov. 13. 1992) (holding that oral statement, "we trust you will be here until you retire," did not create an enforceable contract absent independent consideration). When additional independent consideration is provided, the contract is enforceable even though the promisee has the right to terminate at any time. *See Collins v. Parsons College,* 203 N.W.2d 594, 598 (Iowa 1973). The additional consideration need not benefit the employer. *See id.* at 599.

Enron asserts that Kunzman cannot establish that he offered sufficient additional consideration to support the creation of a lifetime oral contract here. The case law has not been unanimous in deciding what constitutes sufficient additional consideration to support a lifetime employment contract. *Compare Laird v. Eagle Iron Works,* 249 N.W.2d 646, 648 (Iowa 1977) (giving up employment terminable at will was insufficient consideration); and *Hanson,* 256 Iowa 1221, 1229, 130 N.W.2d 654, 659 (giving up opportunity for another job held to be insufficient consideration) with *Eggers v. Armour & Co. of Delaware,* 129 F.2d 729 (8th Cir.1942)

(holding adequate consideration found where a tort claim against the employer was released), and *Riefkin v. E.I. DuPont De Nemours & Co.,* 290 F. 286, 289 (D.C.Cir.1923) (holding sufficient consideration where an employee gave up his business to work at the same occupation with an agreement for permanent employment).

 In the present case, Kunzman claims oral representations were made to him which insured lifelong employment. He acknowledges that an employee claiming permanent employment must demonstrate additional consideration rather than merely a promise of work performance. He asserts the job security he relinquished with his prior employer constitutes additional consideration. Kunzman asserts that he had a permanent position with his prior employer. Enron, on the other hand, asserts that the position was terminable at will. Thus, a material fact question has been generated as to whether Kunzman's previous job was terminable at will and thus did not provide sufficient additional consideration.

 Enron further contends that the statements attributable to Enron are so indefinite as to be insufficient as a matter of law to establish a lifetime contract. The court agrees. Because the precise intentions of parties to an employment agreement are often left unexpressed, contractual obligations may be enforced based upon the reasonable expectations of the parties. *Young v. Cedar County Work Activity Ctr., Inc.,* 418 N.W.2d 844, 847 (Iowa 1987). In *Wolfe,* 389 N.W.2d at 653–54, the Iowa Supreme Court, in determining whether a lifetime contract of employment existed, concluded:

[B]oth of them [the employer and the employee] may understand that the hiring is for a definite period. The circumstances may be evidential of such an understanding, even though the express words, standing alone, would not bear such an interpretation.... [O]ne of the parties (usually the employee) may have had in mind a definite period of employment and the other party had not. Here there is no actual "meeting of the minds"; and yet there may

be a valid contract. Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case, there is a contract in accordance with that understanding.

*Id.* (quoting 3A A. Corbin, *Contracts* § 684, at 224 (1960)). Here, by Kunzman's own admission, the only statements made to him at the time he was hired upon which he bases his claim of a lifetime oral contract are statements made by James Anderson, the operations manager at the Ventura. As Kunzman stated in deposition:

Mr. Anderson, James Anderson, the operations manager of Ventura indicated to me that I could rely on Northern Natural Gas as a place that took care of its employees. This was classified as an old folks' home. Nobody lost their jobs out here. Natural Gas will take care of you. And I relied on his conversation saying this.

Kunzman Dep. at 61. Under similar circumstances, the Iowa Court of Appeals held, in *Kavanaugh v. Medical Assoc. Clinic, P.C.,* 491 N.W.2d 194, 196 (Iowa Ct.App.1992), that where the employee "stated he had a sense or a feeling he would have future employment" but "admitted no specific details were discussed," that the employee has failed to generate a genuine issue of material fact to support his claim for an oral contract for future employment due to the lack of definite terms. *Id.*

Federal court decisions support the court's conclusion that Anderson's statement cannot reasonably be construed as amounting to a promise of guaranteed lifetime. *See Friedman v. BRW, Inc.,* 40 F.3d 293, 295–96 (8th Cir.1994); *Choate v. TRW, Inc.,* 14 F.3d 74, 76 (D.C.Cir.1994); *Mursch v. Van Dorn Co.,* 851 F.2d 990 (7th Cir.1988); *Brown v. Safeway Stores, Inc.,* 190 F.Supp. 295 (E.D.N.Y. 1960); *see also Page v. Carolina Coach Co.,* 667 F.2d 1156, 1157–58 (7th Cir.1982) (statement that plaintiff was a good employee and would move up in the company if he continued to do his job, held a casual remark that

"could not reasonably be interpreted as a promise of lifetime employment, but rather only as words of encouragement.").

In *Friedman,* an architect accepted a salaried position with the defendant, and was subsequently terminated, after twenty months, in a reduction in force. *Friedman,* 40 F.3d at 295. The defendant had written to the plaintiff, when the plaintiff had expressed concern as to the nature and term of the position, explaining that "[t]his is a permanent position, with a six month 'orientation' period." *Id.* The defendant's employee handbook, which the plaintiff received with this letter stated in part:

Referring to the employment-at-will doctrine, just as you retain the right to terminate your employment for any reason and at any time, BRW also retains the right to terminate your employment for any reason and at any time, but the firm hopes that neither your performance, nor business conditions will require such a step.

*Id.* After the plaintiff had begun work he received a memorandum from the defendant's Human Resources Director which stated that: "[t]he correct classification of the position is 'regular.' ([the defendant] refers to all positions as 'regular' or 'temporary.') Your position is a regular position in the Planning Studio of BRW, Inc. with a six-month orientation period." *Id.* The plaintiff was further told that if he had questions regarding the memorandum he should contact the director. *Id.* The plaintiff did not respond to this memorandum. *Id.*

The principal issue before the Eighth Circuit was whether the defendant's offer of "permanent" employment to plaintiff meant that he could only be terminated for cause. The district court granted summary judgment and dismissed his claim, *inter alia,* of breach of contract under Minnesota law. *Id.* In affirming the granting of summary judgment the Eighth Circuit explained:

The issue in the many cases of this type is whether "the parties, in discussing 'permanent' employment, were referring to lifetime employment and were not, instead, simply making a distinction between temporary or seasonal employment and employment which is steady or continuing

although nevertheless terminable at will." *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 628–29 (Minn.1983). [The Plaintiff's] deposition testimony makes it clear that Amundsen's offer of a "permanent" position was of the latter variety. No one at [the defendant] made any additional representation as to the length of his employment, and [the defendant's] employee handbook unambiguously stated that at-will principles would govern issues of termination. [The plaintiff's] failure to protest the Human Resources Director's memorandum is further support for this interpretation of the relationship. In similar circumstances, Minnesota appellate courts have frequently upheld summary dismissal of a breach-of-contract claim. *See, e.g., Aberman v. Malden Mills Indus., Inc.,* 414 N.W.2d 769 (Minn.App.1987). The district court correctly granted summary judgment dismissing [the plaintiff's] contract claim.

*Id.* at 296. Here, too, the issue is whether the parties, in their employment discussions, were referring to lifetime employment, or were, instead, " 'simply making a distinction between temporary or seasonal employment and employment which is steady or continuing although nevertheless terminable at will.' " *Id.* Under the facts of this case the court is compelled to conclude that Anderson's statement also falls into the latter category. The language used by Anderson in this case is far more indefinite than that construed in *Friedman.* Furthermore, unlike the statement in *Friedman,* the statement at issue in this case does not specifically refer to the type of position which Kunzman accepted at Enron.

The District of Columbia Circuit arrived at the same conclusion in its decision in *Choate,* 14 F.3d at 76. In *Choate,* the plaintiff, a career civil servant, accepted a position in 1981 as a senior policy analyst with TRW. He remained in TRW's employ until his firing in 1990. *Id.* at 75. In affirming the granting of summary judgment, the court concluded that the plaintiff had failed to rebut the presumption that the employment is "at will" by presenting "evidence of a 'clearly expressed' contractual intent on the part of both the employer and the employee." *Id.* at

76. In *Choate,* evidence in the form of a letter which merely recited the parties' understanding that the employment contemplated was on a "long term basis," was deemed to be "clearly consistent with the underlying principle of at-will employment that the employment relationship was of unspecified indefinite duration." *Id.* The court went on to point out that:

> [In *Minihan v. American Pharmaceutical Ass'n,* 812 F.2d 726, 727 (D.C.Cir.1987) ] we described as "well-settled" the law that "in the absence of clearly expressed contrary intent," the presumption of at will employment prevails "even though the parties speak in terms of 'permanent' employment" and that the legal assumption is that by using that term "the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party."

*Id.* at 77. (quoting *Minihan,* 812 F.2d at 727).

In *Mursch,* the plaintiff claimed that his employer's remark during the first week of the plaintiff's employment that, "so long as you do your job you can be here until you're a hundred," bound his employer to a contract of lifetime employment. *Mursch,* 851 F.2d at 996. The Seventh Circuit held that the employer's remark could not be reasonably construed as a promise of lifetime employment. *Id.* at 996–97. Rather, the Seventh Circuit reasoned that such promises must be clear and unequivocal, and the employer's remark was neither clear nor unequivocal because it was made during a casual conversation with the employee. *Id.* at 997–98. The court finds no principled basis for distinguishing between the results reached in *Mursch,* and this case.

A similar result was reached in *Brown,* 190 F.Supp. at 297–98. In *Brown,* the plaintiff was a district supervisor for a retail food chain, Reeves, that merged into the defendant. Shortly after the merger, the defendant's division manager called a meeting of all the Reeves' supervisors and, according to the plaintiff, informed them that "he wanted us and he needed us to stay with him, and that there would always be a job for each one

of us." *Id.* at 297. Later, another one of defendant's managers called a meeting of Reeves' supervisors and told them that "we would have jobs as long as we wanted them, 'as long as we lived' was the expression that he used." *Id.* at 297 n. 1. In addition, the plaintiff testified to another conference he had with another one of defendant's managers, in which he was advised that "you eventually have nothing to worry about. You will always be one of us." *Id.* at 297–98. Applying New York law, the district court rejected plaintiff's claim that these statements constituted a binding offer of lifetime employment:

> Contracts of life employment or permanent employment ... are extraordinary and unusual. The meetings were not called for the purpose of discussing or negotiating the term of the employment contract, or wages, or other conditions of employment ... The intention to make an offer of life employment or any unusual offer of employment, as gleaned by the plaintiff, must be clear and unequivocal. A casual remark made at a meeting, a phrase plucked out of context, is too fragile a base on which to rest such a heavy obligation inherent in such a contract. -

*Id.* at 299.

As the Iowa and federal precedent discussed above demonstrate, in similar circumstances, courts have uniformly upheld summary dismissal of a breach of oral lifetime contract claims where the parties, in discussing employment, were referring to the distinction between temporary employment and employment which is continuous nevertheless terminable at will, and not to lifetime employment. This is the precise situation presented here. Therefore, the court concludes that summary judgment is appropriate on Kunzman's breach of an lifetime oral contract claim.

## V. CONCLUSION

The court concludes that Enron's Motion for Summary Judgment must be denied as to Kunzman's age discriminations claims under both the ADEA and Iowa law. Kunzman has generated a genuine issue of material fact on his *prima facie* case of age discrimination in

this reduction in force case. The court further finds that Enron's motion must also be denied on the ground that Kunzman has generated a material question of fact at the third stage of the *McDonnell Douglas* analysis, that Enron's nondiscriminatory reason for terminating Kunzman is pretextual in nature. In addition, the court concludes that Enron's motion shall be denied as to Kunzman's claim that he was terminated in retaliation for his filing of charges of discrimination, on the ground that Kunzman has been able to create a material question of fact as to the pretextual nature of Enron's proffered, nondiscriminatory reasons for its actions, and that Kunzman has been able to generate a material question of fact that Enron's stated reasons for his discharge were pretextual. Finally, Enron's motion is granted as to Kunzman's claim of a breach of an oral lifetime contract, on the ground that the statements upon which Kunzman relies are so indefinite as to be insufficient as a matter of law to establish a lifetime oral contract under Iowa law.

Therefore, Enron's motion for summary judgment is granted as to count IV, and denied as to counts I, II, and III. Summary judgment is entered in favor of Defendants and against Plaintiff on count IV.

**IT IS SO ORDERED.**